**STEVENSON et al. v. BARROW et al.**
**(No. 1634.)**

Court of Civil Appeals of Texas. Beaumont.
April 5, 1928.

Rehearing Denied April 18, 1928.

1. **Adverse possession ⏄27—Evidence of yearly cultivation for more than ten years held sufficient to raise issue of occupancy and claim under 10-year statute.**

Evidence showing possession by yearly cultivation of 6-acre field for a period exceeding 10 years *held* sufficient to raise issue of occupancy and claim under 10-year statute of limitations.

2. **Adverse possession ⏄115 (4, 5)—Whether defendants' claim to land was continuous and hostile for more than 10 years held question for jury under evidence.**

Evidence *held* to make question whether defendants' claim to land in controversy was continuous and hostile for period of more than 10 years one for jury, and not to show as matter of law that defendants abandoned their claim at any time during such period by recognizing title in another.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by M. M. Stevenson and others against Levi Barrow, W. R. Holton and wife, and others. From a judgment for W. R. Holton and wife, plaintiffs appeal. Affirmed.

See, also, 265 S. W. 602; 285 S. W. 840; 291 S. W. 1101.

Smith & Lanier, of Jasper, for appellants.
G. E. Richardson, of Jasper, for appellees.

WALKER, J. On the trial of this case to a jury, appellees, W. R. Holton and his wife, Kate Holton, recovered a judgment against appellants for an undivided interest of 160 acres in the lower Henry Dainwood survey in Jasper county. By agreement, the record title was in appellants. Their propositions here go only to the extent of challenging the verdict of the jury on the issue of ten years' limitation as being without support in the evidence. These propositions are based on the refusal of the trial court to instruct a verdict in their behalf, and are as follows:

(1) There was no evidence of ten years' continuous occupancy;

(2) If such occupancy was shown there was no evidence of ten years' continuous adverse claim by appellees. This case has been in this court twice before. Stevenson v. Barrow ( Tex. Civ. App.) 265 S. W. 602; Stevenson v. Barrow (Tex. Civ. App.) 285 S. W. 840, reversed by the Supreme Court, Stevenson v. Barrow (Tex. Com. App.) 291 S. W. 1101. None of the issues of the former appeals are involved in this appeal. All the parties plaintiff to the former appeals disclaimed on this trial and judgment was awarded against them on such disclaimers, except these appellees, who, as plaintiffs, continued the prosecution of the case, and as such were awarded the land in controversy on their pleas of ten years' limitation.

On this trial appellees claimed through the prior possession of Levi Barrow, based on his cultivation of a 6-acre field on the Dainwood survey. Quoting from appellants' brief:

"Levi Barrow testified that he cleared the land about January 1st, 1911, and cultivated it each year including 1911, down to 1920, when he sold to Will Holton. Will Holton testified that he purchased the land in the summer of 1920, and cultivated it each year thereafter."

Levi Barrow also testified that during the time he was cultivating this 6 acres of land he was claiming 160 acres by limitation, and that he sold this limitation claim to Will Holton, and Will Holton testified that he continued claiming this land by and through and under Levi Barrow from the time he purchased until the trial of this suit, claiming it under the 10 years' statute of limitations. John Rawls testified:

"I first became acquainted with the Levi Barrow field some time about 1910 or 1911, when there was work going on there; they had a cane patch there; I dumped logs right opposite to this place; I have been acquainted with that place ever since that time. They cultivated each and every year."

[1] The possession shown by this testimony consisted only of the yearly cultivation of the 6-acre field from and inclusive of 1911 to and subsequent to the filing of this suit, making a period of more than 10 years. Under Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265, this character of possession was sufficient to raise the issue of limitation. It was there said:

"When yearly crops are raised, it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation for another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is being used."

Appellants' first proposition is overruled.

[2] But if possession be conceded, appellants say that the claim of appellees was not "under a claim of right inconsistent with and hostile" to their title. Holton testified clearly and positively that he had claimed the land continuously since he purchased it from Levi Barrow in 1920, and that he paid Barrow $200 for his claim. Appellants' proposition that appellees' claim was not continuous and hostile is based on the following facts, quoting from appellants' brief:

"Levi Barrow, a witness for appellees, testified: 'I am one of the original defendants in this case. I am not asserting any claim to the

land now. I am acquainted with the Henry Dainwood survey. There are about 7 acres of land in cultivation there; that field is on the northwest corner of the lower Henry Dainwood and almost up against the river. I first became acquainted with that patch when I cleared a little piece of land there and fenced it. I planted a cane patch there in the spring of 1911. I began clearing about January 1st. I worked that cane patch up until 1920. I raised a crop on it each and every year until then. I claimed 160 acres there. I sold that claim to Will Holton in 1920, some time in the summer. When I went there I was claiming 160 acres in the northwest corner up there. No, I was not continuing to claim this land and timber in there after 1920.'

"Appellee, Will Holton, testified: 'I am a brother-in-law to Levi Barrow. * ' * * I bought him out in the summer of 1920. * * * I bought his claim on the land. * * * I bought his claim on 160 acres. I bought what was supposed to be 160 acres out of the northwest end of the tract. I am claiming enough of the west end of this tract to make out 160 acres. I did understand from some source he (Mr. W. J. Barrow) was asserting some sort of a claim to a part of this lower Dainwood survey; he had a field there. * * * My understanding was he owned all that 160 acres; he never did claim to own but 160 acres of it. His 160 acres was on this end of the tract where his field was (38-acre tract). He claimed that Hart tract until he sold it to Hart; he had 100 acres left. As far as I know that is all he was claiming at the time he died. He was paying taxes on the whole tract of land and had been for years. The taxes was all paid together as far as I know, in the old lady's name. Yes; it continued to go that way. I never did render any 160 acres for taxes, or, any part of that survey after I bought. I rendered it in Mrs. Barrow's name and paid taxes on it. I suppose it was her claim. * * * Mr. Barrow (W. J.) had a claim on it alright at the time he died. My claim was not adverse to his that I know of. My wife was his daughter. I was not claiming this land as his heir through my wife. That was not the nature of my first claim to it.'

"Question: 'Isn't it a fact that when we sued the heirs of W. J. Barrow that you all came in and answered, and set up a claim to this land by limitation as heirs of W. J. Barrow, including his widow, and that case was tried the first time on that theory?' Answer: 'Well, our lawyers attended to that part of it; I don't know anything about how much they claimed or what part. I never did pay any attention to it. I think I testified in the first case when it was tried; I don't believe that I had anything to do with that part of it—stating what we were claiming. We were claiming all of Mr. and Mrs. Barrow's property. We were trying to defend their title. We were claiming under the old claim that W. J. Barrow bought when he got the land. We were not claiming under this possession of the 6-acre tract on the first trial. I think we began that claim on the second trial. * * * Me and my wife are claiming this 160 acres. We came in first and claimed with the other heirs on Mr. W. J. Barrow's property. During the first trial we were not asserting any claim that I know of by rea-

son of our adverse or peaceable possession of that 6 acres field.' "

"The testimony of Mr. Will Holton will be better understood when we recall the facts of the former trials of this case. It will be remembered that all of the heirs of W. J. Barrow answered as defendants in the first trial, claiming 160 acres of the land in question as his heirs, and under his possession of the 6-acre field, out of the n. w. corner of said survey. (S. F. p. 44.) See, also, your honors' opinion [Tex. Civ. App.] 265 S. W. 602. The trial court gave the defendants therein a judgment for all of the land sued for on the John W. Dainwood survey and a sufficient amount on the Henry Dainwood survey that, when added to the recovery on the John W. Dainwood, would make 160 acres to be run so as to include all improvements of defendants on the survey, that is the 6 acres field and a strip on the north side of the 38 acres field. This court reversed the judgment of the trial court on the ground, among other things, of W. J. Barrow's death and the consequent suspension of the running of the statutes of limitation for one year thereafter, after excepting which, defendant did not show 10 years' adverse possession. On the second and third trials of the case, defendants eliminated this feature by claiming the possession of the 6-acre field was the possession of Levi Barrow and not W. J. Barrow, and that it was Levi Barrow's claim; and further, they abandoned any attempt to show possession of a strip on the north side of the 38-acre field. All of the defendants disclaiming, except appellees. It was also shown on the first trial that W. J. Barrow had at one time, claimed all of the Henry Dainwood survey.

"It was Will Holton's attempted explanation of these facts—of this change of front—that caused him to testify on this trial that: 'There was no question as far as I know but what it all (the whole Henry Dainwood survey) belonged to him (W. J. Barrow). He was paying taxes on the whole tract, and had been for years. The taxes was all paid together as far as I know, in the old lady's name. (After W. J. Barrow's death) I rendered it in Mrs. Barrow's name and paid taxes on it. I suppose it was her claim. As to whether I called your attention after the suit was filed to the fact that the suit did not include the lower Dainwood survey and insisted on that piece of land being brought in, I insisted on your making a suit covering all of Mrs. Barrow's property, in order to get through with all of it at one time. I did not want two or three suits of it. Mr. Barrow had a claim on it alright at the time he died. * * * ' "

We add the following:

In closing his testimony, Will Holton said:

"*I am claiming now and have been claiming it by virtue of limitation and purchase from Levi Barrow. I purchased it from him in good faith, and claimed it, and continued to claim it in good faith. This is the third trial in this land suit. We have won in every trial. The 160-acre tract I am claiming never has been marked out on the ground by a surveyor.*"

We think these facts brought forward by appellants under their proposition raise only

an issue for the jury on the nature and character and hostility of the possession of Holton and wife. From this testimony it does not follow as a matter of law that Holton and wife had abandoned and were not claiming through Levi Barrow. The purchase of another's claim places the purchaser in privity with the grantor's possession and claim. It is true this theory of the case was not advanced on the first trial. We agree with appellants in their proposition that the fact that Will Holton "purchased the claim of Levi Barrow did not prevent him from abandoning the idea of claiming under him and to claim under W. J. Barrow. He alone had the right to determine under whom he would claim privity." The evidence raised the issue that Levi Barrow had almost perfected a limitation title to the land awarded appellees by this judgment. The evidence raised the further issue that these appellees continued Levi Barrow's possession, in privity with that possession and claim, during the balance of 1920, after they purchased from him, and into 1921, for a sufficient length of time to mature fully the limitation title of ten years. If the title once vested in appellees by, through, and under the possession and claim of Levi Barrow, it was not divested by the subsequent dealings between Will Holton and his mother-in-law and his recognition on the first trial of this case that the land now in controversy belonged to the estate of W. J. Barrow, deceased. All the circumstances brought forward by appellants were admissible in explanation of the possession and claim of both Levi Barrow and his grantee, Will Holton. If that possession was at any time from its inception to the completion of the necessary ten years' occupancy and claim in subordination to the claim of W. J. Barrow, deceased, it did not mature title in appellees and would not support this judgment. But if the possession was in the right of Levi Barrow and Will Holton, independent of and hostile to the claim of W. J. Barrow and his estate, it vested the title in appellees as fully and completely as if by

deed from and under appellants. Owning such title, appellees did not divest themselves of it by subsequently recognizing, if they did, the claim of W. J. Barrow's estate as being superior to theirs. The facts and circumstances brought forward by appellants raise the issue, but do not establish it as a matter of law, that Levi Barrow and Will Holton, prior to the second trial of this case, had been holding in recognition of the right of W. J. Barrow and his estate. The verdict of the jury resolved this issue against appellants. As that verdict is attacked here only on the proposition that it has no support in the evidence, and not that it is against the great weight and preponderance of the evidence, it must be sustained. But had the proposition been advanced that the verdict was so against the great weight and preponderance of the evidence as to be clearly wrong, it would still have support. Clearly, the facts of this case were for the jury. The evidence raised in appellees' favor every element of limitation as defined by the court in Odem v. Leahy (Tex. Civ. App.) 264 S. W. 218, where it was said:

"To acquire the title to another man's property, the possession and use must be hostile, adverse, unqualified, and unmistakable to the true owner. The flag raised and planted over the property, so to speak, must not be allowed to dip, but to float continuously. The claim should likewise be continuous and consistent with that possession, so that there be no lisp or word to the contrary during that period allowed to escape, because it would break the possession as a matter of law."

While appellants raised as an issue of fact against appellees that they may have let slip some "lisp or word" that they were holding in recognition of the rights of W. J. Barrow, the evidence did not establish that as a proposition of law.

From what we have said it follows that appellants' second proposition must be overruled.

The judgment of the trial court is in all things affirmed.