**STEPHENSON et al. v. BARROW et al.**
(No. 1203—5212.)

Commission of Appeals of Texas, Section A.
April 3, 1929.

Smith & Lanier, of Jasper, and C. A. Lord, of Beaumont, for plaintiffs in error.

Roi Blake and G. E. Richardson, both of Jasper, for defendants in error.

NICKELS, J. For a general statement of the case, see opinion of the Court of Civil Appeals, 5 S.W.(2d) 200.

Paper title, on the record, is in plaintiffs in error. Title (to 160 acres) by ten years' prescription (articles 5510–5515, R. S. 1925) was adjudged to Holton and wife upon the theory of possession, etc., of the whole or parts of a 6-acre tract by Levi Barrow from some time in 1911 to some time in the "summer" or "fall" of 1920 (we assume, the "fall") and subsequent possession (supposedly in right secured by oral transfer from Levi Barrow) by Holton.

The case has been tried three times.

In the first trial Levi Barrow et al., as heirs, and Mrs. J. E. Barrow, as community survivor of W. J. Barrow, claimed title to the "6-acre tract" by reason of purchase by W. J. Barrow and also by reason of ten years' prescription begun by him and continued (after his death in 1915) by them. Holton's testimony (given in the last trial) is that they (including himself and wife and Mrs. J. E. Barrow and Levi) were then "claiming all of Mr. & Mrs. Barrow's property * * * were trying to defend their title * * * were claiming, under the old claim, that W. J. Barrow * * * bought when he got the land * * * were not claiming under this possession of the 6-acre tract." We note in passing that Holton et al., in the first trial, got a jury finding that W. J. Barrow and themselves (in succession to him) claimed, cultivated, used, and enjoyed the 6-acre tract for 10 consecutive years intervening February 25, 1907, and July 1, 1922. (Tex. Civ. App.) 265 S. W. 602, 603. The judgment then procured was reversed, and the cause was remanded October 13, 1924, because the finding was without supporting proof, since one year, following the death of W. J. Barrow, in 1915, had to be deducted under the requirements of article 5704, R. S. 1911.

June 2, 1925, all of the (present) defendants in error, except Holton and wife, filed a disclaimer to all lands involved; Holton and wife disclaimed as to all land except 160 acres (including the "6-acre tract") in the Henry Dainwood survey; and in respect to the 160 acres Holton and wife asserted ten years' prescription by themselves and others whose claims they had. In the second trial (after June 2, 1925) it was claimed by Holton and wife that Levi Barrow had had and maintained adverse possession, etc., from some time in 1910 or in 1911 until parol sale of his claim in 1920 to Holton, and that Holton completed the ten years' adverse possession. Upon a jury finding establishing the claim Holton and wife got judgment for the 160 acres. The judgment was affirmed by the Court of Civil Appeals, 285 S. W. 840, but was reversed by the Supreme Court on recommendation of the Commission of Appeals, 291 S. W. 1101.

In the third trial, resulting in the judgment affirmed by the Court of Civil Appeals, 5 S.W.(2d) 200, and now before us, Holton and wife claimed (in testimony) under adverse possession of the "6-acre tract" by Levi Barrow commencing in 1911 (we assume, January 1, 1911), and ending with parol sale of his claim to Holton in the "summer" or "fall" of 1920 and completion of ten years' adverse possession by Holton.

Mrs. J. E. Barrow (widow of W. J. Barrow) testified (by deposition) as follows:

"Q. What other lands are you now and have you been claiming in the vicinity of your home place? A. The lower Henry Dainwood survey" (which includes the six-acre tract) "which we bought and paid for and have known of the claim and possession of same since the Civil War.

"Q. What improvements or fields have you on this tract? A. The main field which has been cultivated since the Civil War. Also about six acres in the N. W. corner of the Dainwood survey" (this is the six-acre tract now in question).

Mrs. Holton is the daughter of W. J. Barrow and Mrs. J. E. Barrow. The conditions by which his negotiations with Levi Barrow (a brother of Mrs. Holton) and his possession of the "6-acre tract" were circumstanced are thus stated in Holton's testimony: "When I went up there" (in 1919) "Mrs. Barrow" (i. e., Mrs. J. E. Barrow) "turned over all the place to me except that cane patch" (i. e., the 6-acre tract); "she reserved that for Levi, and I didn't like it much as I thought I was to get possession of all her property, so I worried about it a little and spoke to my wife about it and she mentioned it to her mother and she explained to me that she reserved that for Levi, as Levi was claiming on that end of the tract of land" (i. e. the Henry Dainwood survey) "and that his Pa had made him put in that cane patch; I didn't go to Levi about it then, his mother spoke to me about it though; he agreed and said that could be fixed as he could sell it to me, and so he did, and I bought him out in the summer of 1920; I paid him part cash and part syrup, $150.00 in cash and the rest of it in syrup—I bought his claim on the land and also his cane crop; I bought his claim on 160 acres."

Taxes on the whole of the Henry Dainwood survey had been paid, according to Holton's (then) understanding "in the old lady's name" (i. e., in the name of Mrs. J. E. Barrow), and subsequent to the transactions detailed in that part of his testimony last-quoted, he said: "It continued to go that way." He said: "I never did render any 160 acres for taxes or any part of that survey after I bought, I rendered it in Mrs. Barrow's name and paid taxes on it."

Thus, we think, there was (within the prescriptive period) recognition of superiority of Mrs. Barrow's "claim" (rather, "claims" under W. J. Barrow and Mrs. J. E. Barrow) and entry and subsequent possession by Holton in the right of Mrs. Barrow and the "heirs." But if that may not properly be stated as a matter of law, then testimony given by Holton in respect to other matters dissolves whatever of equivocation there may be in the import of the circumstances just described.

The original petition filed by Stephenson et al. did not include description of the Henry Dainwood survey or prayer for its recovery. Holton "insisted" to the attorney representing Stephenson et al. "that he make a suit covering all of Mrs. Barrow's property in order to get through with all of it at one time." "I didn't want two or three separate suits on it." He said: "Mr. Barrow" (i. e., W. J. Barrow) "had a claim on it" (i. e., on the Henry Dainwood survey) "at the time he died." An amended petition was filed including description of the Henry Dainwood survey (except for some parts not involved) and prayer for its recovery. Thereupon, as noted above, Holton joined the heirs, etc., of W. J. Barrow in seeking to establish title (to the "6-acre tract," etc.) by prescription begun by W. J. Barrow and carried on by his widow and heirs. (Tex. Civ. App.) 265 S. W. 602. In respect to that action Holton testified: "My claim was not adverse to his" (i. e., to W. J. Barrow's et al.) "that I know of."

In the second trial, as noted above, Holton "mended his hold" and asserted claim to the "6-acre tract" (rather, claim to 160 acres in virtue of possession of the "6-acre tract") in Levi Barrow's prescription completed by his own (as assignee of Levi). Speaking for himself and wife (in the last trial) he said: "I think we began that claim on the second trial."

What may be the state of mind of a capable person at a given time is a matter of fact of which that person alone has knowledge. No other person is in a position to know absolutely or accurately to declare the truth. His act may belie his declaration, or antecedent declaration may tender refutation of latest expression, and, thus, issue of fact may be made against him. But wherever he presently makes declaration of what his intent was at a given time and that declaration is against his present claim of interest he ought to be concluded thereby—barring, of course, reason to doubt his competency or presence of other excusing conditions. Cf. Thompson v. Moor (Tex. Com. App.) 14 S.W. (2d) 803.

Holton's admission that he wanted the "6-acre tract" (and the 154 acres supposed to go with it) to be dealt with in the litigation as property claimed or owned by Mrs. J. E. Barrow et al., and that he (and wife) "began" the claim under Levi Barrow's prescription, etc., on the second trial, have a backward relation and mean (probatively) that there was no prior intent to claim (or no claim itself)

in the right of Levi Barrow. This does not mean that recognition of another's title after title has vested by prescription may preclude the claimant's rights; whether that may ever happen or whether it has occurred here are questions about which we do not express or imply conclusions. What it does mean is this: Holton's testimony about what happened after the prescriptive period may have elapsed is of such nature as to disclose absence of prior intent to claim adversely to Mrs. J. E. Barrow et al., and, thus, to negative possible inference that he bought Levi's crop and "claim" in 1920 otherwise than in recognition of Mrs. J. E. Barrow's claim and protection of his tenancy under her.

The "dealings between Will Holton and his mother-in-law" happened within the prescriptive period, and not "subsequent" to any possible vesting of title, as assumed by the Court of Civil Appeals.

█ Since in any view of the record prescription by and in succession to W. J. Barrow was not completed (Tex. Civ. App.) 265 S. W. 602 and prescription was not completed by Levi Barrow in his own right and since Holton's possession was in the supposed right of W. J. Barrow et al., there is lack of warrant for the verdict and judgment.

We recommend: (a) That the judgment of the Court of Civil Appeals be reversed; (b) that the judgment of the district court be reformed so as to vest title to and right of possession of the 160 acres (claimed by W. R. Holton and wife, Kate Holton) in plaintiffs in error, and so as to eliminate therefrom the decretal for partition and order appointing commissioners for partition; and (c) that, as thus reformed, the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, the judgment of the District Court reformed, and as reformed affirmed, as recommended by the Commission of Appeals.