## CITY OF WACO v. THRALLS.

### No. 2524.

Court of Civil Appeals of Texas. Waco.
May 20, 1943.

Rehearing Denied June 10, 1943.

George Morrow, City Atty., Sam Darden, and Ed Burleson, all of Waco, for appellant.

John McGlasson, of Waco, for appellee.

RICE, Chief Justice.

This suit was instituted by John Thralls against the City of Waco, a home rule municipal corporation, to recover damages because of personal injuries suffered by him by reason of the alleged negligence· of the appellant City.

The jury answered the special issues ·sub- mitted to it favorably to the plaintiff. · Based thereon, the trial court rendered judgment in favor of Thralls and against the City for the sum of $10,143. The City has appealed.

This is the second appeal of this cause. On the prior appeal the judgment of the trial court was reversed and the cause remanded. See City of Waco v. Thralls, Tex.Civ.App., 128 S.W.2d 462.

Plaintiff's petition alleges, and the testimony establishes, that John Thralls received an injury to his back on or about· June 15, 1934, while operating an electric drill in the discharge of his duties as an employee of the City; that he remained away from his employment until about July 1, 1934; that on said last mentioned date he resumed his duties as an employee of the City and worked until about July 5, 1934. Because his back was still troubling him, it was agreed he would take a vacation for two weeks. At the end of his vacation, and on or about July 15 or 20, 1934, he returned to his job and worked continuously until August 18, 1934, when he sustained a second injury. He did not work thereafter. It is not contended that any negligent act of the City caused the second injury.

■·Article 3·of the Charter of the City of Waco requires the filing of a claim for ·

damages within thirty days after the date the injury is inflicted. This charter provision has been sustained, insofar as personal injuries are concerned. City of Waco v. Landingham, 138 Tex. 156, 157 S.W.2d 631; City of Waco v. Thralls, supra; Cawthorn v. City of Houston, Tex.Com.App., 231 S.W. 701.

Thralls did not file his claim with the City until November 25, 1936.

To relieve himself of the consequences of his failure to file his claim within thirty days of the date he was injured, plaintiff, on the prior appeal of this cause, contended that the City had waived compliance with this charter provision and was estopped to assert the same as a bar to his cause of action because of representations alleged to have been made to him by the City Physician in reference to the nature and extent of his injuries. This court held upon the former appeal that the representations allegedly made by the City Physician to Thralls were insufficient to constitute a waiver of the charter provision requiring the filing of notice of claim, and reversed and remanded this cause. In so doing this court said: "The question of whether plaintiff was lulled into sleep by the conduct of the City in continuing to pay him his salary, as it customarily did regardless of liability therefor, was not submitted to the jury."

Thereupon plaintiff amended his pleadings and alleged in substance that he was lulled into a sense of security by the fact that the City of Waco continued to pay him his wages after he was injured, and that this caused him not to file his claim within the thirty day period.

At the time he was injured plaintiff was drawing $112.50 per month. The City paid its employees on the 5th and the 20th of the month. He was paid his regular salary on June 20 and on July 5, 1934, and thereafter was paid his regular salary twice each month until December, 1934, when his salary was reduced to $67.50 per month. This reduced salary was paid regularly from December, 1934, until November, 1936, at which time payment was stopped. He filed his claim with the City on November 25, 1936, and shortly thereafter this suit was instituted.

Thralls testified that while the City continued to pay him and provide him with the services of physicians he felt safe and secure; and that if the City had not paid him his salary on July 5th, after he was injured on June 15th, he would have filed his claim.

By its first point the City urges that since it is undisputed that John Thralls was injured on June 15, 1934, and did not file a claim therefor with the City until November 25, 1936, there was no sufficient evidence of waiver of the filing of said claim by the City or of an estoppel against the City, and the trial court therefore erred in overruling the City's motion for an instructed verdict as well as its motion for judgment notwithstanding the verdict of the jury.

We overrule this point. We have carefully examined the statement of facts filed in this case as well as the statement of facts filed in the former appeal. The evidence was substantially the same in both cases, except for the fact that plaintiff testified in the former trial that the advice of the City Physician lulled him into a sense of security, while on this trial he testified that he was lulled into a feeling of security both by the advice of said physician and by the action of the City in continuing to pay him his wages regularly after he was injured.

With practically the same record before it on the former appeal, this court said that the question as to whether plaintiff was lulled into sleep by the conduct of the City in continuing to pay him his salary was not submitted to the jury, thereby impliedly holding that such question was raised by the evidence. See City of Waco v. Thralls, supra, Tex.Civ.App., 128 S.W.2d at page 465, point 6.

■ The provisions of the Charter of the City of Waco requiring the filing of notice of claim for damages may be waived by the duly authorized city officials, provided the waiver occurs before the expiration of the period for filing same. Cawthorn v. City of Houston, Tex.Com.App., 231 S.W. 701; 30 Tex.Jur. 558; City of Waco v. Thralls, supra.

■ A waiver, in law, is the voluntary relinquishment of a known right; or it may consist of such conduct as warrants an inference of the relinquishment of a right. If, under all the facts and circumstances of this case, a jury can say that the Mayor and Commissioners intended to waive strict compliance with the charter provision requiring filing of notice within thirty days of injury, then compliance with such charter provision would not be necessary as a condition precedent to the maintaining of

this suit. Cawthorn v. City of Houston, supra; 43 Tex.Jur. 891; The Praetorians v. Strickland, Tex.Com.App., 66 S.W.2d 686.

■ The question of waiver is ordinarily one for the jury when the intention of the parties is not clear. Missouri, K. & T. R. Co. v. Hendricks, 49 Tex.Civ.App. 314, 108 S.W. 745 (writ denied).

■ Independent of the question of waiver, the doctrine of estoppel was invoked by plaintiff's pleadings and, in our opinion, applies to the facts of this case. If the City, through its duly authorized agents, so conducted itself within the period of thirty days of plaintiff's injury as to lull the plaintiff into a sense of security, causing him to think that it was waiving the charter provisions, and if an ordinarily prudent person, under the same or similar circumstances, would have so concluded, then the City is estopped to demand strict compliance therewith, even though such city officials in authority had no intention of waiving the charter provisions. Cawthorn v. City of Houston, supra; City of Waco v. Thralls, supra; John Hancock Mutual Life Ins. Co. v. Howard, Tex.Civ.App., 85 S.W.2d 986.

While there is evidence that the fact of Thralls' injury was known by his immediate superiors and to the City Physician, there is no direct evidence that his injury, within thirty days after it happened, was made known to the Mayor or any of the City Commissioners. It is undisputed, however, that the City continued to pay Thralls his regular wages during the thirty day period after he was injured, although he did no work for the City from the date of his injury, June 15th, to the 5th day of July. The City Attorney testified that since 1928 and up to the time that Thralls was injured, it had been the custom and policy of the City to pay its employees who had been hurt while working on the job regardless of whether the City was responsible or not. He further testified that the custom was changed sometime after plaintiff was injured. Plaintiff testified he had no knowledge of this custom. He further testified that but for the action of the City in paying his regular wages on July 5, 1934, he would have filed his claim; that the City's action in making this payment under the circumstances made him feel secure.

■ We are of the opinion that this record is barren of evidence that any duly authorized officer of the City waived the filing of plaintiff's claim; but we are not prepared to say that there is no evidence to support plaintiff's plea of estoppel. The fact that it had long been the custom of the City to pay its employees when they were injured on the job would be evidence, we think, that the payment made to Thralls of his wages on July 5th was duly authorized although he had worked only a few days, if at all, during the period for which payment was made. This, together with plaintiff's testimony that such payment lulled him into a sense of security, was sufficient, we believe, to support the jury's finding on the issue of estoppel.

It is true that plaintiff testified he did not know of the charter provisions requiring him to file his claim within thirty days after his injury occurred. But it does not follow as a matter of law, as contended by appellant, that for this reason he could not have been lulled into a sense of security causing him to think that the governing body was waiving the charter provision. Plaintiff testified that but for the payment of July 5th he would have known there was something wrong and would have made an investigation and filed his claim.

Appellant cites, in support of his contention, City of Waco v. Griffin, decided by this court, opinion ordered not published by authority of Rule 452, Texas Rules of Civil Procedure. The facts of the Griffin case distinguish it from this case. Griffin was injured on Saturday afternoon, August 13th. He testified that he knew at the time he was injured he was to have a vacation of fifteen days, beginning August 19th; that he continued to work regularly after he was injured until his vacation began. When his vacation ended on September 2nd he reported back to work and because of his injury, was assigned to a job where the work was lighter than that he was performing at the time he was injured. He continued to work regularly from September 3rd to January 3rd, when he was discharged. He did not file his claim until after January 3rd. Griffin did not miss a day's work on account of his injury, and was only paid for work performed. In this case Thralls was paid his regular wages although he did not work from June 15th to. July 1st, and did not work after August 18th.

■ By its second point the City contends that since, on the former trial, Thralls on direct examination by his at-

torney, testified that the reason for his failure to file his claim within thirty days of his injury was because of a statement made to him by the City Physician with respect to the nature, character and extent of his injury, he was concluded by such testimony, and therefore the trial court was in error in permitting the plaintiff to testify to another and different factual basis for his plea of estoppel, to-wit, payment of his wages made to him by the City.

On the former trial the record reveals that while plaintiff was testifying in response to questions propounded to him by his own counsel, the following took place:

"Q. Tell the jury whether or not, Mr. Thralls, if Dr. Crosthwait had not told you that you would be all right after you laid off ten days and then doing light work for thirty days, you would have filed your claim against the City for your injury. A. Yes, sir I relied on Dr. Crosthwait, what he told me, if he had told me I was injured, I would have taken steps to protect my rights.

"Q. What do you mean by taking steps? A. I would have filed my claim with the City."

On the trial of this cause, while plaintiff was testifying on direct examination conducted by his counsel, the following testimony was admitted over the City's objection:

"Q. Just tell the jury what the facts are, Mr. Thralls, whether or not, by the payment of the salary on July 5th after you were injured in June, that had any effect to cause you to feel secure or otherwise, that you would be compensated whether you filed a claim or not? Did that payment have any effect on you, John? A. Yes, it did.

"Q. What effect did it have? A. I felt safe they would carry me on, after being off and losing time; I had no doubt I would be continued on the payroll.

"Q. What would you have done if they had not paid you on July 5th, after the injury of June 15th? A. I would have filed my claim. * * * Yes, as long as they continued my payment and doing what they did under their physician, I had no reason to feel unsafe—I felt safe and secure."

On cross-examination Thralls testified:

"Q. What I want to know, Mr. Thralls, which is correct; is the fact that the City paid you, is that the reason you did not file your claim, or because what Dr. Wilson Crosthwait said to you? A. Well, either, Sam. I would have filed my claim if the City had cut me off. I would have filed claim regardless of what Dr. Crosthwait said. If he would have talked up and told me, 'John, you are permanently hurt,' I would have filed my claim."

On re-direct he testified:

"Q. John, Mr. Darden was asking you,— you did rely on Dr. Crosthwait, the City Physician's report to you. What caused you to rely on this report? A. Because I was getting my check and I did what I thought they wanted me to do.

"Q. Would you have relied on it if they had not been paying you and you thought you had been doing exactly what they wanted you to do? A. I would not.

"Q. If the City had not paid you on July 5, 1934, for the loss after your first injury, would you have relied on Dr. Crosthwait telling you what was the matter with you and when you would return to work? A. No, I would not have relied on it if they had not paid me.

"Q. Tell the jury what the facts are, if they had not paid you, you would have known there was something wrong. A. I would have known there was something wrong and made an investigation and filed my claim with them."

■ It is the general rule, as contended by the City, that where a litigant admits positive and definite facts, which, if true, would defeat his right to recover, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admission and cannot successfully complain if the court directs a verdict against him. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569; Stephenson v. Barrow, Tex.Com.App., 15 S.W.2d 575; 17 Tex.Jur. 577, 578; Southern Surety Co. v. Inabnit, Tex.Civ.App., 1 S.W.2d 412; Kimmell v. Tipton, Tex. Civ.App., 142 S.W.2d 421; Kanopka v. Kanopa, 113 Conn. 30, 154 A. 144, 80 A. L.R. 619, 624; Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973; Thompson v. Moor, Tex.Com.App., 14 S.W.2d 803.

■ It has been held also that "what may be the state of mind of a capable

person at a given time is a matter of fact of which that person alone has knowledge. No other person is in a position to know absolutely or accurately to declare the truth. * * * But wherever he presently makes declaration of what his intent was at a given time and that declaration is against his present claim of interest, he ought to be concluded thereby—barring, of course, reason to doubt his competency or presence of other excusing conditions." Stephenson v. Barrow, supra [15 S.W.2d 576].

 The rules of law hereinabove set forth and invoked by the city are founded on the basic principles of justice and honesty. When applied in a proper case they serve a salutary purpose. But to apply these rules to the record before us, and to hold that John Thralls' mouth is now closed to give in evidence the testimony above set forth excusing his failure to file his claim within thirty days of his injury and because thereof his cause of action cannot now be asserted, would defeat the very purpose that the rules of law above set forth were adopted to achieve. John Thralls' testimony on the former trial is in all material respects the same as that he gave on this trial. In the former trial he was asked if he would have filed his claim but for the advice given him by the City Physician, and he said he would. He was not asked on the former trial what his action would have been if the City had failed to pay him on July 5th for the time he had lost because of his injury; but he did testify on that trial, as he did in this, that he was paid on July 5th for the time previously lost, and that he was thereafter paid regularly by the City until November, 1936. It may well be that a man may have several reasons motivating him to do, or to refrain from doing, a certain act. The fact that he testified as to one of these reasons when his attention is directed to such reason, and fails to testify to another reason when his attention is not directed thereto, is not necessarily indicative of fraud or dishonesty. The testimony of Thralls as given by him on the two trials is not inconsistent. All that he says could be true. His credibility was for the jury; his testimony presented a question of fact as to his reason or reasons for failing to file his claim within the time prescribed by the city charter. This question of fact was for the jury. We feel that we cannot say as a matter of law, that the testimony of John Thralls on this trial, giving two reasons for his failure to file his claim, when he assigned only one of such reasons on the former trial, is so inconsistent with honesty and fair dealing that it should be stricken from the record.

By its third point the City asserts that the trial court was in error in refusing to set aside the verdict of the jury with respect to Special Issues Nos. 13, 13-a, 13-b and 13-c, because contrary to the undisputed evidence, and in the alternative, because the verdict of the jury is contrary to the overwhelming preponderance of the evidence.

In response to Issue 13, the jury found that the Board of Commissioners had knowledge of John Thralls' injury at the time he was paid on July 5, 1934; in response to Issue 13-a, it found that by reason of the payment made to him on July 5, 1934, John Thralls was lulled into a sense of security; in answer to 13-b, it found that such feeling of security was the cause of John Thralls' failure to file his claim for damages because of his injury within thirty days of June 15, 1934; and in response to 13-c the jury found that an ordinarily prudent person would have concluded that the Board of Commissioners was waiving said provision of the city charter in respect to filing his claim in thirty days.

 There is no direct evidence that the Board of Commissioners knew of John Thralls' injury at the time he was paid on July 5, 1934. There is evidence that its shop foreman, the City Physician, and its water superintendent who had general supervision of the department in which plaintiff was working at the time he was injured, all knew of plaintiff's injury shortly after it occurred. Each of these agents of the City acquired this knowledge while in the discharge of the duties of their employment, and their knowledge would be imputed to their principal. However, it occurs to us that the issue of fact as to whether or not such governing body knew of plaintiff's injury when he was paid on July 5th is not of controlling importance in respect to plaintiff's plea of estoppel. It is undisputed that it was the City's custom and policy of long standing to pay its employees hurt in the line of their duty, without regard to the question of the City's liability in damages therefor. This was done by the department heads keeping the

injured employees on the payroll. This being true, the payment to Thralls on July 5th was authorized, whether or not the governing body knew of his injury. This assignment of error is overruled.

Special Issue No. 13-b was submitted to the jury by the court as follows: "Do you find from a preponderance of the evidence that such feeling of security was the cause of John Thralls failing to file his claim for damages by reason of his injury, if any within thirty days of June 15, 1934?"

Appellant seasonably objected to the issue as submitted because it did not embrace the element "causing him to think they were waiving said charter provision". The trial court overruled such objection and this action of the court is assigned as error by appellant's fourth point.

We overruled this point. The issue immediately preceding the one here complained of elicited a finding from the jury that the payment to plaintiff on July 5th lulled him into a sense of security. The next issue inquired of the jury whether such feeling of security was the cause of John Thralls failing to file his claim for damages within thirty days of June 15, 1934. The jury answered said issue in the affirmative. The next issue inquired of the jury whether it found from the evidence that an ordinarily prudent person would have concluded that the Board of Commissioners was waiving said charter provision. This issue was answered "yes".

In our opinion, the issues above mentioned were a proper submission of the elements of estoppel raised by the evidence.

In its fifth point appellant says that since the pleadings and the uncontradicted evidence disclose that plaintiff was injured on or about June 15, 1934, and since he did not file his suit until December 3, 1936, and there was no sufficient evidence of waiver or estoppel, the court erred in failing to instruct a verdict for appellant.

By its sixth point appellant says that the court erred in entering judgment against it because there was no jury finding on appellee's plea of waiver or estoppel in respect to appellant's plea of the two years statute of limitation.

Appellee pleaded by way of estoppel to appellant's plea of limitation a resolution passed by the Board of Commissioners on February 19, 1935, reading as follows:

"Be it resolved by the Board of Commissioners of the City of Waco:

"That whereas, John Thralls, an employee of the City of Waco, was injured in line of duty and is now carried upon the payroll at sixty percent of his former wage and it is probable that he will be disabled for a period of approximately twelve months longer before he can resume his usual duties. Therefore, it is the sense of this Board that, if the City discontinues payment of the said sixty per cent of his former wage before the said John Thralls is able to resume his duties, his cause of action, if any, against the City of Waco shall be treated as if it had arisen at the time the payments are discontinued; that is, if they are discontinued before said John Thralls has recovered from injuries received in line of duty herein referred to."

The resolution was introduced in evidence, and the fact that it was duly passed and adopted by the governing body of the City is undisputed. It is true that the governing body of the City could not, by the passage of said resolution, after plaintiff's cause of action was barred by his failure to file his claim within thirty days after his injury, have waived said charter provisions and thereby rendered it inoperative. However, since the City was estopped to urge as a defense plaintiff's failure to file his notice of injury within the thirty day period, the governing body of the City had the legal right to settle or compromise, if it so desired, plaintiff's claim against the City. In so handling the matter, such body also had the legal right to enter into the agreement reflected by the resolution above set forth at a time when plaintiff's cause of action was not barred. It being undisputed that the governing body did enter into the agreement, and it being also undisputed that plaintiff relied thereon, and accepted payments of the City made thereunder until more than two years elapsed since plaintiff's cause of action accrued, appellant was estopped as a matter of law from urging its defense of the two years statute of limitation to plaintiff's asserted cause of action. The evidence being undisputed, and being of such character that reasonable minds could not differ as to the inferences to be drawn therefrom, the court did not err in determining that there was no issue of fact to be submitted to the jury, and in finding from the undisputed facts that appellant was estopped as a matter of law.

Appellant next takes the position that the undisputed evidence discloses that appellee had knowledge of the defective condition of the drill and appreciated the danger arising therefrom; that the facts in evidence relied on by appellee to suspend the assumption of risk were insufficient as a matter of law, and the trial court should have granted appellant's motion for instructed verdict.

The view we take of this case renders it unnecessary to state either the rules of law applicable to the doctrine of assumed risk, or those rules governing when the servant attempts to relieve himself of the doctrine of assumed risk by reporting the defect to his master.

In reference to the matter here involved, the jury found: (1) That H. C. Money promised plaintiff to have the electric drill repaired; (2) that the promise was made before plaintiff was injured; (3) that at the time he was injured plaintiff believed the drill had been repaired; (4) that plaintiff did not know the condition of the drill at the time he began to operate it on the occasion of his injury; (5) that in the exercise of ordinary care plaintiff should not have known of the condition of the drill at the time he began to operate it on the occasion in question; (6) that the danger in operating the drill was not so obvious that an ordinarily prudent person would have known that it endangered his safety.

■ In our opinion the facts support the findings of the jury, and we overrule this contention. It is admitted that plaintiff knew the drill was defective when he was instructed by his foreman Money to perform the work which required the use of the drill. Appellee testified that he informed his foreman that he would not use the drill until it was repaired; and the latter then stated to him that he would repair it or have it repaired. Some time later someone in the shop called to appellee that his drill was fixed and ready to go. He thereupon made use of the drill, believing that it had been repaired, and as a result of the defective condition of the tool he was injured. This defect was latent, and could not have been discovered by an ordinary inspection. It has been held that although a servant may at one time have known of the existence of a defect, he may not know of it at the time he undertakes to use the appliance, and the circumstances may justify him in believing that the defective condition has been remedied. Gulf, C. & S. F. R. Co. v. Garren, 96 Tex. 605, 74 S.W. 897, 97 Am. St.Rep. 939, Id., Tex.Civ.App., 84 S.W. 1096 (writ refused); Northern Pacific R. Co. v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 979, 38 L.Ed. 958. The jury having found, on sufficient evidence, that appellee did not know at the time he used the drill on the occasion in question that it was in a defective condition, the doctrine of assumed risk is not applicable.

■ By its ninth point appellant takes the position that the findings of the jury were conflicting.

The jury found: (a) That the electric drill was in such condition that the electric current would put it in operation without having the switch applied; (b) that the drill was put in operation by a jar without the switch thereon being turned by appellee at the time; (c) that the bit of the drill stalled while cutting into the surface of the bolt at the time in question; (d) that the drill reversed its operation as a result of the stalling of the bit; and (e) that the reverse operation of the drill, resulting from the stalling of the bit, was a risk ordinarily incident to Thralls' employment.

In our opinion there is no conflict. Appellee contended that he was injured because the drill began to rotate because of its defective condition, unexpectedly to him, and without him turning the switch to put it in operation; that because of this unexpected occurrence he was caught off balance, so that the reverse rotating of the drill caused by the bit being stalled, twisted his body against the radiator of the truck and injured him. The fact that the drill unexpectedly began rotating because of its latent defect was the proximate cause of plaintiff's injury, and not its rotating in reverse because of the stalled bit. The appellee could have foreseen and guarded against the stalling of the bit and the consequences thereof, but not that the appliance would of its own accord begin operation after he had turned it off.

■ After appellee was injured and prior to the filing of this suit appellant had paid appellee because of his injury the total of $1,998.50. Appellant contended that in any event it should have credit for this amount. The court, in view of this contention, submitted the issue as to the amount of appellee's damage by first inquiring of the jury whether appellee sus-

tained any damages; second, but conditioned on a yes answer to the above, whether appellee sustained damages in excess of $1,998.50 by reason of his injury; and third, conditioned on a yes answer to the first, what the amount of such damage was in excess of $1,998.50.

Appellant objected to the issues as submitted for the reason that they were general instructions informing the jury of the ultimate effect of their answers. This court held, on the former appeal of this case, that in the event of another trial, the jury should be charged in some appropriate language "that in estimating the compensation, if any, the jury should take into consideration and allow the City credit for the compensation actually paid the employee from the date of his injury to November 1, 1936." The amount that appellee had been paid by the City was in evidence without objection. We overrule this assignment. In the first place, it occurs to us that the court properly submitted the matter to the jury. But if the submission was improper, we are of the opinion that the error, if error was committed, was harmless.

We have carefully considered each of the remaining points presented by appellant's brief. Being of the opinion that none of them present reversible error, each of appellant's points is hereby overruled.

The judgment of the trial court is accordingly affirmed.