CITY OF HOUSTON V. EDWARD W. HRUSKA

No. A-5032. Decided October 12, 1955.
Rehearing Overruled December 7, 1955.
(283 S.W. 2d Series 739)

*Will Sears*, City Attorney, *Richard H. Burks* and *Robert L. Burns,* Assistants City Attorney, for petitioner.

Since there was no evidence that plaintiff, Hruska, had given written notice to the mayor and city council within the ninety days as required by the City Charter, the city was not estopped from requiring compliance with such provision and the trial court erred in overruling city's request for instructed verdict. McGuire v. City of Dallas, 141 Texas 170, 170 S.W. 2d 722; Byrd v. City of Dallas, 118 Texas 28, 6 S.W. 2d 738; Johnson v. City of Chisholm, 222 Minn. 179, 24 N.W. 2d 232; 82 A.L.R. 749; 153 A.L.R. 329.

*Paul Strong, Russell Scott* and *Pat N. Fahey,* all of Houston, for respondents.

In reply to petitioner's points cited Denton v. White, 179 S.W. 2d 834, refused, w.o.m.; Beaumont v. Silas, 200 S.W. 2d

690, refused n.r.e.; Rusk County v. Maloney, 38 S.W. 2d 868, refused.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This is an action against our petitioner, the City of Houston, for personal injury to one of its employees, the respondent Hruska, and involves as a primary point the alleged estoppel of the City to assert as a defense its otherwise applicable charter provision requiring written notice of such a claim within 90 days from the date of the injury.

A judgment upon a verdict favorable to the respondent-plaintiff was affirmed by the Waco Court of Civil Appeals on transfer. 272 S.W. 2d 778.

The accident in question occurred on April 17, 1948, while Hruska was working as a laborer with a crew engaged in removing sections of concrete pipe joined together as a culvert under a street. The sections were each 4 feet long, 3 feet in outside diameter, and of somewhat over 2000 pounds weight. The method followed was to dig a trench across the street so as to leave the culvert exposed down to the level on which it rested, the sections being then removed one by one, starting at one end of the culvert and working toward the other. The sections were pulled out by means of a chain attached to a section at one end and to an automotive road grader at the other.

In order to tie the chain to a given section, however, the latter had first to be separated from the rest of the culvert, so that the end of the chain could be run through and out of the section and then knotted or otherwise affixed to the main length of the chain. This separation process, which gave rise to the accident in suit, was to insert a tree trunk or timber in the particular section, leaving part of the trunk protruding at the outer or unjoined end. To this protruding part the chain was attached, the grader then pulling on the chain with the result of raising the outer end of the section and thus forcing the other end slightly away from its juncture with the next section. When the end of the former was raised a foot or so, the respondent Hruska and another man standing ready for the purpose would insert a plank some 2 inches thick under the raised end, and the chain would then be relaxed, leaving the section end to rest on the plank and the gap between the two sections thus to remain sufficiently open, the chain being then removed from the tree trunk and tied to the section for final removal of the latter.

When the plank was being inserted under a particular section being raised, Hruska evidently standing close to the section and having one arm across the plank, the tree trunk unexpectedly pulled out, because the grader had pulled it and the section end too far and thus too high. When this happened, the section, of course, fell back toward its original position, possibly somehow acquiring additional downward force by reason of the force applied to the chain. Its fall broke the plank and caused the part held by Hruska to fly up, evidently striking him on the side of the head and at the same time throwing him quite high into the air.

Hruska was officially employed as a truck driver and, because of his assigned truck being out of repair, was acting as helper to another truck driver at the scene of the accident when the City employee in charge of the operation, one Windecker, directed him to assist with the particular task at which he was injured. The sole liability issue submitted was found in his favor, convicting the City of negligence in failing to discharge the allegedly nondelegable duty to warn him of the danger of the task in question and instruct him how to perform it with minimum risk.

The City presents here various points, which were overruled without discussion in the court below, including one to the effect that, as a matter of law under the evidence, the dangerous character of the work in question was quite obvious and thus not within the rule of decisions such as Ft. Worth Elevators Co. v. Russell, 123 Texas 128, 70 S.W. 2d 397, and Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Texas, 580, 72 S.W. 2d 899, upon which Hruska, and evidently both courts below relied. There is, indeed, some force to the view that a workman with less intelligence than Hruska's testimony shows him to have, and less experience of manual work than a truck driver, would yet necessarily realize that if something went wrong with the lifting process, the plainly heavy pipe section might fall and inevitably impart a violent shock to the plank and probably to anyone holding it under his arm. But since both the petitioner City and the court below evidently consider the main point to be that of the notice of claim provision of the charter, and since our disagreement with the court on that point disposes of the case, we limit our decision to that question.

The charter provision (Art. IX, Sec. 11)[1] admittedly is

[1]"Section 11. Notice of claim against city for damages. Before the City of

valid in its requirement of 90 days' notice and, by reason of Hruska's failure to give any notice within that period (April 17, 1948 - July 17, 1948), bars his action, unless the defense is precluded by the conduct of officers and employees of the City following the accident. In this latter connection Ordinance 845[2] requires that any *waiver* of the charter provision be by resolution of the City Council passed during the 90-day period, and there is nothing to indicate that any member of the Council or the Mayor even knew about Hruska's injury.

The conduct (or misconduct!) alleged to foreclose the City's defense consisted of keeping Hruska on the payroll (with the notation "Injured" on six particular rolls) for approximately a year, without his doing any work for the City during that period. Its effect, in the view of the jury, was to mislead Hruska, lull him into a false sense of security and cause him as a reasonably prudent person not to file his claim until he did file it on April 1st, 1949, about a year after the accident and a week after his salary was discontinued. This claim, incidentally, asserted no failure to warn or instruct Hruska but merely negligence on the part of a fellow servant in the operation of the grader.

It should be added: that, salary payments being at 15-day intervals, Hruska actually received, during the critical 90 days, at least three payments, which he could not have attributed to his accumulated sick leave and vacation aggregating only three weeks; that 2 days after the accident, Windecker, who had been

---

[2]"Section 1: Neither the Mayor, the City Manager, nor any other officer or employee of the City of Houston shall have authority to waive any of the provisions of said Section 11, Article IX, of the Charter of said City, but same may be waived only by a resolution of the City Council of the City of Houston made and passed before the expiration of the said period of ninety days provided for in said section of the Charter and which resolution shall be evidenced by the minutes and records of said City Council."

Houston shall be liable for damages for personal injuries of any kind, or for injuries to or destruction of property of any kind, the person injured, or the owner of the property injured or destroyed, or someone in his behalf, shall give the Mayor and City Council notice in writing of such injury or destruction, duly verified within 90 days after the same has been sustained, stating in such written notice when, where and how the injury or destruction occurred, and the apparent extent thereof, the amount of damage sustained, the amount for which claimant will settle, the actual residence of the claimant by street and number at the date the claim is presented, and the actual residence of such claimant for six months immdiately preceding the occurrence of such injuries or destruction, and the names and addresses of the witnesses upon whom he relies to establish his claim, and a failure to so notfiy the Mayor and City Council within the time and manner specified herein shall exonerate, excuse and exempt the City from any liability whatsoever, provided that nothing herein shall be construed to effect or repeal section 12 of Article IX of this charter."

in charge at the scene, and W. H. Starkey, Foreman of the division of the Department of Public Works to which Hruska regularly belonged, made an unsworn written report of the accident to J. M. Nagle, Director of Public Works (under supervision of the Mayor or City Manager) described as "an accident report for Eddie Hruska," which did not conform to, and is not contended to have been, or to have been relied on by Hruska as, a sufficient substitute for, a notice of claim; that, beginning within the 90-day period and continuing long thereafter, Nagle, the Director of Civil Service, the City Controller and other City officers and employees had or were charged with notice either through the payrolls or by reports from physicians or otherwise that Hruska was absent from work on account of his alleged injuries and yet was being regularly paid. None of these persons were, of course, the Mayor, City Manager or a member of the City Council, although the payrolls bore the signature of the City Treasurer, Collier, with the notation "for the Mayor," Collier being evidently authorized in some informal fashion so to sign.

There was no charter or ordinance provision authorizing continued salary payments to disabled employees except by way of "accumulated" sick leave or other such leave under the provisions of Ordinance 8700, Rule XIV, Sec. 2, pars. (b) and (g) requiring action by the City Manager (changed to mean "Mayor" by later ordinance) or by him and other officials.[3]

The charter also provides (Art. VII, Sec. 3) that "the Council shall act only by ordinance, resolution or motion - - ."

Other than as may be revealed by the foregoing, there was no evidence of representations to Hruska by or for the City concerning his claim, nor any proof that anyone connected with the City knew or thought he intended making a claim or that he thought the City anticipated a claim, until his claim was actually presented long after the required date. Indeed, the Court of

---

3. "(b) No employee shall be allowed to accumulate more than fifteen working days of sick leave with pay in one calendar year. But sick leave with full pay shall be given to a total of two full months, if needed, to an employee whom the City Manager determines was injured in line of duty."

"(g) In case of protracted illness and after the employee has exhausted his accumulated sick leave and his accumulated vacation time, and upon the recommendations of the Director of Health, Director of Treasury, and the Secretary, the City Manager may grant such employee an extended sick leave with full or reduced pay; provided that such extended leave shall not exceed six months for the uniformed or active employees of the Police and Fire Departments, nor exceed four months for clerical employees of the Police and Fire Departments or four months for employees of all other departments."

Civil Appeals characterized the City's conduct in not dropping him from the payroll as "humanitarian" in high degree.

It is our conclusion that the City is not estopped to assert its defense in question. We rest this view on our approval of both the result and opinions (by "refusal" of the writ of error) in Phillips v. City of Abilene, 195 S.W. 2d 147, and Hallman v. City of Pampa, 147 S.W. 2d 543, by the Courts of Civil Appeals at Eastland and Amarillo, respectively. Both decisions held against the estoppel alleged by the damage claimant to arise from representations of City officers made during the notice of claim period and much more clearly misleading in character than keeping a disabled employee on the payroll. In the Phillips case the representations were those of the Mayor and a City Commissioner, and in the Hallman case those of the City Manager. In the Phillips case there was also a non-waiver ordinance similar to that of the instant case.[2] and the decision rested on it as well as the broader ground taken in both cases, that since the notice of claim provision required presentment of the notice to the City Council or Commission, the officers in question could not by their individual conduct estop the City from asserting failure to file it.

Both opinions distinguished Cawthon v. City of Houston, Tex. Comm. App., 231 S.W. 701, rather a leading case on the subject and one involving apparently the identical charter provision now before us,[1] but decided prior to the adoption of the present non-waiver ordinance.[2] The basis of the alleged waiver and estoppel there was the act of a City Commissioner, who, with authority of the Commission itself, offered the plaintiff a given sum for a release during the 90-day period. On exceptions, the court, while stating that the Commission could probably not waive the plaintiff's failure to present the claim by conduct or even formal resolution occurring *after* expiration of the 90 days, held the allegations to state a case of both waiver and estoppel. The case is distinguished in the Phillips and Hallman opinions on the ground that the Commission itself had authorized the settlement offer and in the Phillips on the additional ground that no non-waiver ordinance was involved. In the latter connection it was said:

"If it should be held that the city was estopped by reason of the acts and conduct of the mayor and city commissioners, then that portion of the ordinance that prohibits a waiver of the writ-

[2] See note 2 on page 142.
[1] See note 1 on page 141.
[2] See note 2 on page 142.

ten notice would be nullified. The doctrine of estoppel cannot be invoked to nullify a mandatory statutory restriction." (195 S.W. 2d 150.)

The respondent Hruska in turn would distinguish the Phillips and Hallman cases from the instant case on the sole ground that those cases did not involve payments to employees, and that the instant payments being but "irregular" payments for sick leave essentially complying with the corresponding ordinance,[3] they were legal and thus could estop the City, whether authorized by the City Council or not.

In applying this distinction to the above quotation from the Phillips case, it is argued that if the non-waiver provision be applied to prevent estoppel by an otherwise *lawful* act of the officers in question, the result is to permit the City to abolish by ordinance the well-established doctrine of estoppel of a city in the area of proprietary functions. The same argument would evidently also nullify the provision as applied to otherwise lawful acts alleged to constitute merely a waiver in its technical sense. Assuming the latter argument to be valid and any contrary implication from the Phillips case to be erroneous, we yet regard that decision and the Hallman case as controlling.

If the salary payments were in fact by way of lawful extended sick leave, and Hruska assumed them to be such, as seems to be argued for him that he did, or should be considered as doing, this would obviously not be ground for estoppel, because payment for sick leave is simply not a representation that notice of a claim for *damages* is waived. If he thought he was being paid lawful sickness benefits, he had no reason to be misled about notice of a claim he might file for damages at common law.

In any event, the payments were not merely "irregular" in form, but were unauthorized. The requirements of the ordinance[3], including determination of the matter by the Mayor (the title "City Manager" admittedly means "Mayor" by reason of a certain later ordinance) were not met merely by signature of the payrolls by the City Treasurer with the words "for the Mayor," even assuming that the signatures thereon of the other officers constituted the required "recommendations" for special sick leave, when admittedly none of them had information that such leave was wanted and never discussed the matter with the Mayor or anyone else. There is evidently no ordinance or regu-

[3]See note 3 on page 143.

lation governing the purported representation of the Mayor by the City Treasurer, even for the purpose of signing payrolls, and if we assume that the Mayor could validly delegate that function to the City Treasurer, it does not mean that he could also delegate thereby the function expressly vested in him alone by the ordinance covering sick leave.

Our conclusion does not appear to conflict with either of the two decisions of the Waco Court of Civil Appeals in City of Waco v. Thralls, 128 S.W. 2d 462, 172 S.W. 2d 142, in both of which we approved the judgment, although without necessarily approving the opinion. In those cases it was proved that the City had a long standing custom of keeping on the payroll employees injured in line of duty, and this was held to present a fact issue as to whether the same practice as regards the employee, Thralls, was not an act which was fully authorized on the part of the City and therefore as properly the basis for an estoppel as if fully authorized by the Mayor and City Commission. In the instant case, the record reflects no such established custom but, on the contrary, an ordinance requiring specific procedure which was not followed.

The judgments below are reversed and judgment is here rendered that the respondent Hruska take nothing by his suit.

Opinion delivered October 12, 1955.

MR. JUSTICE SMITH, joined by JUSTICE WILSON, dissenting.

This case is controlled by the opinions in the two cases of City of Waco v. Thralls, Tex. Civ. App., 128 S.W. 2d 462 and 172 S.W. 2d 142 and Cawthorn v. City of Houston, Tex. Com. App., 231 S.W. 701. I cannot agree that the cases of Phillips v. City of Abilene, Tex. Civ. App., 195 S.W. 2d 147, wr. ref., and Hallman v. City of Pampa, Tex. Civ. App., 147 S.W. 2d 543, wr. ref., control the disposition of the present case.

The respondent filed his Fourth Amended Original Petition in which he plead both waiver and estoppel. The plea of estoppel is independent of the plea of waiver. The respondent alleged in substance that the City had notice of the injury (not the notice as required by City ordinance) within two days after the accident, and that he was examined by two or three doctors who were regularly employed by the City, and that such physical examinations were made at the instance of a Mr. Hord, superintendent of the Street and Bridge Department of the City of

Houston, and that as a result of such examinations which were made within less than 90 days after the date of injury, the City kept respondent on the payroll for approximately one year thereafter, and that the payroll records contained the word "injured" beside the name of "Edward W. Hruska." Respondent further alleged "* * * that by reason of the matters and things aforesaid, he was mislead and lulled into a sense of security, and the City of Houston is estopped to assert that plaintiff did not comply with such charter provisions; furthermore, and as additional facts in connection with such estoppel, a few ways after his pay was stopped, on or about March 25, 1949, or in the alternative on or about February 25, 1949, plaintiff on April 1, 1949, served on the defendant, City of Houston, proper written notice of his claim as provided for (in) said Art. IX, Sec. 11, of said City's charter * * * without in any manner pointing out any defects in such notice or requesting additional information of any kind, the City Secretary of the defendant City of Houston, notified plaintiff's attorney that his claim had been denied, after the laps of more than three months, and when nothing further could be done about it, on September 9, 1949. * * * "

The above pleadings, the evidence and jury answers to Special issues Nos. 3, 4, 5 and 6 constitute sufficient basis for the judgment entered by the trial court to the effect that the City was estopped to deny liability because of the failure of respondent to file written notice of his claim within 90 days after the date he sustained his injuries.

In the first Thralls case (128 S.W. 2d 465) the Court said:

"The question as to whether plaintiff was lulled into sleep by the conduct of the city in continuing to pay him his salary, as it customarily did regardless of liability therefor, was not submitted to the jury." The case was reversed and remanded and prior to the second trial the pleadings were amended. The issue of stoppel was submitted to the jury and upon favorable answer to the plaintiff, judgment was entered accordingly.

On the second appeal of the case, City of Waco v. Thralls, 172 S.W. 2d 142, on page 145 the Court of Civil Appeals said:

"Thereupon plaintiff amended his pleadings and alleged in substance that he was lulled into a sense of security by the fact that the City of Waco continued to pay him his wages after he was injured, and that this caused him not to file his claim within the thirty day period." The court passed upon this question of estoppel and affirmed the judgment of the trial court in favor of

Thralls. This Court refused the application for writ of error with the notation "Refused for Want of Merit." In applying the doctrine of estoppel, the Court said:

"Independent of the question of waiver, the doctrine of estoppel was invoked by plaintiff's pleadings and, in our opinion, applies to the facts of this case. If the City, through its duly authorized agents, so conducted itself within the period of thirty days of plaintiff's injury as to lull the plaintiff into a sense of security, causing him to think that it was waiving the charter provisions, and if an ordinarily prudent person, under the same or similar circumstances, would have so concluded, then the City is estopped to demand strict compliance therewith, even though such city officials in authority had no intention of waiving the charter provisions. Cawthorn v. City of Houston, supra; (Tex. Com. App., 231 S.W. 701) ; City of Waco v. Thralls, supra; (Tex. Civ. App., 128 S.W. 2d 462) ; John Hancock Mutual Life Ins. Co. v. Howard, Tex. Civ. App., 85 S.W. 2d 986."

The majority opinion attempts to distinguish the above case from the one at bar. It seems to me that it amounts to a distinction without a difference. It is true that in the Thralls case, supra, evidence was introduced as to custom, but by no means did the Court base its holding upon such evidence alone. In my opinion, the same conclusion would have been reached if there had been no evidence in regard to the custom of the City to keep injured employees on the payroll.

Apparently respondent in the present case tracked the pleadings in the second Thralls case and had read the opinions of the Court of Civil Appeals in both cases. The effect of the majority opinion is to overrule the Thralls cases, supra, as well as the case of Cawthorn v. City of Houston, supra, so far as the pleading of estoppel independent of waiver is concerned. Admittedly, a written notice to a city of an injury required by a city ordinance is a condition precedent to an action for such injury; however, such requirement is in derogation of common right and should be construed with reasonable strictness and not extended so as to preclude allegations and proof of facts showing estoppel. See City of Dallas v. Shows, Tex. Com. App., 212 S.W. 633. The non-waiver ordinance adopted by the City did not deprive the respondent from establishing facts showing an estoppel independent of such ordinance. The Phillips and Hallman cases, in my opinion, involve different facts and pleadings and deal with the question of waiver and not estoppel independent of the issue of waiver.

On the only point discussed by the majority, I would affirm the judgment of the trial court and the Court of Civil Appeals.

Associate Justice Wilson joins in this dissent.

Opinion delivered October 12, 1955.

Rehearing overruled December 7, 1955.