The CITY OF DENISON, Appellant,

v.

Lynda FULCE et vir, Appellees.

No. 7916.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 4, 1969.

Rehearing Denied Feb. 25, 1969.

Charles H. Gullett, Denison, Elliott & Nall, Sherman, Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Brown, Kennedy & Hill, R. C. Slagle, Jr., Sherman, for appellee.

DAVIS, Justice.

Plaintiffs-appellees, Lynda Fulce and husband, Eugene Fulce, sued defendant-appellant, The City of Denison, for damages for personal injuries received by Lynda Fulce as the result of a collision between a car driven by Eugene Fulce, in which Mrs. Fulce was a passenger, and road grader being used to repair streets and operated by an employee of the City of Denison. All special issues were answered in favor of appellees. Judgment was entered against appellant. It has perfected its appeal and brings forward five (5) points of error.

By its first four (4) points, appellant says the trial court erred in entering judgment for appellees: because of noncompliance with the Charter Notice requirements; the jury findings with respect to waiver and estoppel were supported by no evidence of probative force in the light of the applicable legal principles; the jury findings of waiver and estoppel were supported by insufficient evidence and were against the great weight and preponderance of the evidence; and, the failure to comply with the City Charter provisions for written notice within thirty (30) days bars any recovery by appellees as a matter of law.

Appellees were seeking damages as the result of an accident that occurred on July 9, 1964. They allege in their pleadings that appellant was an incorporated city and had in force and effect Sec. 138 of the Charter of the City of Denison which reads as follows:

"SECTION 138: Before the City shall be liable to damage claim or suit for personal injury, or damage to property, the person who is injured or whose property is damaged or someone in his behalf shall give the City Manager or the City Clerk notice in writing within thirty days after the occurring of the alleged injury, or damage, stating specifically in such notice when where and how the injury or damage was sustained, and setting forth the extent of the injury or damage as accurately as possible, and giving the names and addresses of all witnesses upon whose testimony such person is relying to establish the injury or damage. No action at law for damages shall be brought against the City for personal injury or damage to property prior to the expiration of sixty days after the notice hereinbefore described has been filed with the City Manager or the City Clerk. After the expiration of the sixty days aforementioned, the complainant may then have two years in which to bring an action of law. In case of injuries resulting in death, before the City shall be liable in damages therefor the person or persons claiming such damage shall within thirty days after the death of the injured person give notice as above required in case of personal injury."

Appellees alleged full compliance with Sec. 138 of the City Charter; and, in the alternative that the appellant, by its duly authorized agents, had lulled appellees into a sense of security regarding the written notice required by Sec. 138 so that appellant was thereby estopped to assert any failure of strict compliance with Sec. 138 on the part of appellees. Appellees alleged, in substance, that they attempted to give notice in writing, or actually gave notice in writing, as required by Sec. 138 of the Charter of the appellant by contacting the Mayor, Worth Campbell, hereinafter referred to as Campbell, then the City Manager, W. L. Somers, hereinafter referred to as Somers, within the 30 days required by Sec. 138 of the Charter, and, then, upon the City Manager's instructions, contacted one O. J. (Pat) Powell, hereinafter referred to as Powell, and gave him

the written notice on July 16, 1964, just one week after the collision. In the written statement, signed by Eugene Fulce, he gave all the information required by Sec. 138 of the Charter of appellant. The statement reads as follows:

"July 16, 1964
Denison, Texas

"My name is Eugene Fulce. I am a white American male, 22 years of age, married and I reside at 210 East Munson in Denison, Texas.

"I am the owner of a 1959 Chevrolet Impalla that was involved in an accident on July 9, 1964 at approximately 3:40 p. m. I was driving my car at the time of the accident and my wife, Lynda Fulce, age 21, was a passenger in the front seat with me, as well as our 3 yr. old son Glenn and my wife's brother Gayle Shires, age 14 who lives at 5420 Harvey Lane in Denison, Texas. The other vehicle involved in this accident was a road grader that belongs to the City of Denison. This accident occurred on Crawford Street Road near the intersection of Jenny Lane in Denison, Texas. This is located in the extreme west part of Denison. The city was working on Crawford Street Road paving it. My father-in-law lives out on Crawford Street Road and we were on our way out there to leave my wife at her father's house. We have been traveling this road regularly and knew that they were working on this road and a day or two before this accident occurred a barracade had been completely across Crawford Street Road to detour the traffic on to Jenny Lane. On this day, there was no barracade and I continued driving west on Crawford Street Road at approximately 40 mph and just as I was going up a small hill, I met a car that raised a lot of dust and limited my visibility. I was traveling on the right side of the road and I believe that just before the impact, I realized this road grader was on the road in front of me. I do not remember if I applied my brakes or not, but the people at the accident scene told me later that there were no skid marks. The front of my car collided with the rear of the road grader on the right side of the road. The road grader was backing up at this time with the blade up and was moving backwards when the accident occurred. Dust was still very thick at this time that had been stirred up by the car that had met me. I was real close to the road grader before I realized that it was there.

"The impact caused heavy damage to the front of my car and all of the occupants in my car including myself were injured, but apparently the injuries were not serious except to my wife and Gayle Shires. My wife is at the Denison General Hospital under the care of Dr. Kubala and she received bad facial cuts and cuts and bruises on her legs and knees and chest. She works for me in running a paper route and has for the past 4 months and her earnings have been about $150.00 a month. My wife is also 7 months pregnant but at this time the doctor does not feel that the baby is affected.

"Gayle Shires received bad cuts on his face, head and knees and in particular his right arm is in bad shape. He is in the Denison General Hospital under the care of Dr. Kubala.

"I received bruised ribs and knees and was checked by Dr. Kubala, but I am not losing time from work because of my injuries. I was not confined to the hospital.

"Our three year old son received a bruised nose, but was not confined to the hospital and was checked by Dr. Kubala.

"I do not know the names of any actual witnesses to this accident, however I believe the first arriving witness was a preacher by the name of Ellwood Corizine and he had just left my father-in-laws house and came upon the accident

after it had happened. I did not see any baracades before reaching this road grader and after the accident, Gayle Shires was sitting on a baracade, that was lying flat on the ground and the city crew had him move so that this baracade could be put up and someone at the accident scene hollered that the baracade had better be put up before another accident occurred.

"The city police investigated this accident and I was charged with negligent collision. I have read the above statement and it is true and correct to the best of belief and knowledge."

Appellant takes the position that Powell was not employed by appellant. That he was an insurance adjuster. Neither Campbell nor Somers testified in the case. Appellees offered the testimony of G. W. Shires, father of appellee, Lynda Fulce, who was acting for and in behalf of appellees, who testified as follows:

"Q. Did you go to anybody with the City of Denison in connection with the accident in which your son-in-law and daughter were involved?

A. Yeah.

Q. For what purpose did you go to the, anybody connected with the City of Denison?

A. Well, I knew we would have to file a claim about something, about the wreck.

Q. To whom did you go and talk with, if you talked with anyone?

A. Well, I went to Worth Campbell first.

Q. And would you please tell the jury who Mr. Worth Campbell is, or was at that time?

A. Well, he was the mayor at that time.

Q. All right. What did you say or do in connection with Mr. Worth Campbell?

A. Well, I just asked him about the wreck business, who would I see, and he said to go to Mr. Somers."

*    *    *    *    *    *

Q. Why did you go to Mr. Somers?

A. Mr. Campbell told me to.

Q. All right, sir. And what did you state or say to Mr. W. L. Somers?

A. Well, I just told him that they had a wreck out there and I wanted to know what to do about it.

Q. All right, sir.

A. And he told me to go to Mr. Pat Powell, *that he handled all of their claims*." (Emp. added)

*    *    *    *    *    *

Q. All right, Mr. Shires, what all did you say to Mr. Somers regarding the accident, if you recall?

A. Well, I just told him as near as I could how bad they was hurt and where they was hurt.

Q. Who is they?

A. You was talking about Somers, wasn't you?

Q. Talking about Somers?

A. Well, I just asked him what, about what for me to do.

Q. And what did he say?

A. About all he told me to do was go see Pat Powell.

Q. All right, sir. And did you then *go see Pat Powell*?

A. Yes, sir.

Q. When did you see Pat Powell with respect to this date that you talked to Mr. Somers?

A. Well, I went right on to his office, on up to Pat Powell's office.

Q. Was he there?

A. No.

Q. When then did you talk to Mr. Powell?

A. Well, I believe it was either the third or fourth day after that before we ever got to see him. *We made an appointment to see him but we never could get to see him.*

Q. You say we. Who is we?

A. Me and Eugene.

Q. All right, sir. Then when was it that you did get to see Mr. Powell?

A. Well, I don't remember just what day it was, but it was either the third or fourth day after I went to see him. I don't know what day of the month it was.

Q. All right sir. *Did Mr. Powell come to your house first or did you go to his office first?*

A. *I went to his office.*

Q. On one or more occasions?

A. Well, we went, I reckon, made four trips. I did.

Q. *Did you yourself give a statement to Mr. Powell?*

A. *Yes, sir.* (Emphasis added)

*    *    *    *    *    *

Q. Was Mr. Eugene Fulce present when you talked with Mr. Powell?

A. Yeah.

Q. All right. *State whether or not Mr. Powell took a statement from Mr. Fulce in your presence?*

A. *Yeah.* (Emphasis added) * * *

Q. *Did Mr. Fulce sign the statement for Mr. Powell in your presence?*

A. *Yes.* (Emp. added)

*    *    *    *    *    *

Q. Was this conference that you had with Mr. Powell and the signing

of the statements within thirty days following the happening of the accident?

*    *    *    *    *    *

A. Well, I just don't remember whether it was or not.

Q. About how long would your best estimate be?

A. Well, I don't believe it was over two weeks.

Q. All right.

A. I just ain't going to say for sure, but I don't believe it was."

Shires had a minor son, Gayle Shires, who was also a passenger in appellees' car who was injured very severely in the collision.

Powell testified in the case as follows:

"Q. Mr. Powell, I hand to you what has been marked and identified as plaintiffs' Exhibit 1 and ask if you can recognize or identify that exhibit?

A. I believe that's a copy of the statement that I took from Eugene Fulce.

Q. All right, and that shows you took the statement from him on what date?

A. July 16th, 1964.

Q. And you asked him to explain what injuries or damages were sustained as a result of the accident?

*    *    *    *    *    *

Q. Did you not?

A. Yes, sir.

Q. All right. Did Mr. Eugene Fulce sign the statement that you took from him?

A. I'm not sure.

Q. What is your best recollection?

A. I believe that he did."

Appellee Eugene Fulce testified that he went to see Powell on the following Thursday (one week after the wreck) and signed the written statement. He was aksed:

"Q. And what did—what was the conversation, what did Pat Powell want from you?"

He answered: *"He told me that he would be the one for me to give my information* to, so I just gave him all the information I knew of about the wreck." (Emphasis added). Fulce further testified that, in view of the information he had, he believed that Powell was an agent or an employee of the appellant; that Powell was the one he was supposed to give the written notice to. Fulce testified that he signed the written statement about the wreck, left it with Powell, and carried a copy with him.

This case was tried by Judge R. C. Vaughan, one of the most outstanding trial judges in Texas. These same points of error were submitted to Judge Vaughan; and, he overruled them. He submitted the special issues to the jury. On the question of written notice, and waiver and estoppel, he submitted special issues 18 to 22, which issues and the jury's answer thereto are as follows:

"SPECIAL ISSUE NO. 18:

"Do you find from a preponderance of the evidence that the defendant City of Denison, by the conduct of its City Manager W. L. Somers, in regard to the claim of plaintiff• Eugene Fulce, waived strict compliance with Section 138 of the Charter of the City of Denison?

You are instructed that a 'waiver' is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right.

Answer 'yes' or 'no'.

ANSWER: YES

"SPECIAL ISSUE NO. 19:

"Do you find from a preponderance of the evidence that the conduct of the City Manager, W. L. Somers, led the plaintiff Eugene Fulce to give his notice in writing of his claim against the City of Denison to O. J. (Pat) Powell?

"Answer 'yes' or 'no'.

ANSWER: YES

If you have answered the foregoing special issue 'yes', then answer the following issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 20:

Do you find from a preponderance of the evidence that the conduct of the City Manager, W. L. Somers, in leading plaintiff Eugene Fulce to give his notice in writing of his claim against the City of Denison to O. J. (Pat) Powell, if you have so found in answer to the preceding special issue, lulled the plaintiff Eugene Fulce into a sense of security?

Answer 'yes' or 'no'.

ANSWER: YES

If you have answered the foregoing special issue 'yes', then answer the following issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 21:

Do you find from a preponderance of the evidence that such feeling of security, if any you have found in answer to the preceding special issue, was the cause of the failure of the plaintiff Eugene Fulce to file a written notice pursuant to Section 138 of the Charter of the City of Denison?

Answer 'yes' or 'no'.

ANSWER: YES

If you have answered the foregoing special issue 'yes', then answer the following issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 22:

Do you find from a preponderance of the evidence that an ordinarily prudent

person would have concluded from the circumstances that the City Manager was waiving Section 138 of the Charter of the City of Denison?

Answer 'yes' or 'no'.

ANSWER: YES"

█ Counsel for appellant has filed an excellent brief. We think the law is different from the position taken by appellant. We have to view the evidence in the light most favorable to the jury's findings. There is some evidence, and the evidence is sufficient to support the jury's findings.

Appellant relies most heavily upon the recent case of Smith v. City of Dallas (Sp. Ct.1968) 425 S.W.2d 467, n. w. h., as not permitting the claimant to give notice to an insurance adjuster. An insurance adjuster contacted the claimant in the Smith case and took a written statement from him. There is a critical distinction in the facts in that case and in this case. In the Smith case, plaintiffs relied only upon a statement and conduct of the adjuster. In this case appellees rely upon the conduct and statement and instructions given to them by the City Manager of the City of Denison. Appellees, or someone in their behalf, first contacted the Mayor of the City of Denison. The Mayor told them that they would have to see the City Manager. The City Manager gave them the positive instructions that they would have to go see O. J. (Pat) Powell, to whom they were to give their written notice. The process of the appellees in giving a written statement to Powell was certainly set in motion by Somers, the City Manager.

The notice in writing was given within 30 days after the date of the accident. It was given to Powell and was in absolute conformity with the charter provisions. It contained the facts of the occurrence of the accident, stated the injuries and damages sustained, contained a list of all known witnesses, was given to a specific individual at the personal instructions of the City Manager, and was signed by one of the appellees.

The Supreme Court of Texas in City of Houston v. Hruska (1955) 155 Tex. 139, 283 S.W.2d 739 held that the City was not estopped from asserting its defense of non-compliance with the charter provisions of written notice within a limited time under the particular facts as proved therein. However, the Supreme Court in no way indicated that the City could not waive strict compliance, or be estopped to assert the noncompliance, but, rather, stated that the noncompliance " * * * bars his action, *unless* the defense is precluded by the conduct of officers and employees of the City following the accident." (Emphasis added) The appellees in this case contacted the City Manager within the 30 days and acted upon the instructions of the City Manager.

Appellant also relied upon the case of Hallman v. City of Pampa (Tex.Civ.App. 1941), 147 S.W.2d 543, error refused, because the City Manager was without authority to bar the City by waiver or estoppel since no such authority was conferred upon him by the City Charter. Appellants tried to infer that the City Manager of the City of Denison had no such authority to waive the written notice, or to bind the City by waiver or estoppel. A close examination of the Hallman case will show that the applicable charter provisions required notice be given to the Mayor, or City Commissioner. If the Mayor or City Commissioner had been contacted in that case, instead of the City Manager, the holding in that case could have been different. In this case, appellees contacted the City Manager to whom written notice could have been given under the city charter.

There are many other cases that the appellants rely upon, but none of them are in point for similar reasons as pointed out in the above cases.

The courts of this State have always held that strict compliance with the charter provisions of a city, more or less, are mandatory. There are at least two exceptions to this General rule. In the case of Smith v. City of Dallas (Tex.Civ.App. 1966) 404 S.W.2d 839 (affirmed by the Sup.Ct.) the court had this to say:

"It is well settled, however, that a municipal corporation may waive its rights under such a charter provision, and that it may also be estopped from relying thereon". (Citing authorities)

In Cawthorn v. City of Houston, 231 S.W. 701 (Tex.Comm'n of Appeals, opinion adopted by the Sup.Ct.) the court said:

"The mayor and commissioners of the city of Houston are vested with broad general powers. They have the right to do everything in the management of the city's affairs which is not prohibited by its charter. They alone have authority to adjust and settle claims for damages against the city. The provision in question is one of procedure only, and is but an aid to the mayor and commissioners in passing upon the liability of the city in any given case. Whether or not they could waive this provision after the 90 days had expired we do not say. We doubt it. But they are not prohibited from waiving it during the 90 days' period. The charter does not prohibit a waiver at any time. If the mayor and commissioners are willing to investigate a given case themselves, and attempt to compromise the same during the 90 days period, we see no reason why they should not be permitted to do so. The provision is solely for their convenience. We think they can waive strict compliance with this provision. A waiver, in law, is the voluntary relinquishment of a known right, and if, under the facts, a jury can say that the mayor and commissioners intended to waive strict compliance with this provision, such compliance would not be necessary as a condition precedent to the maintenance of this suit for damages. The question of waiver is ordinarily one for a jury, where intention of the parties is not clear. For a case in point, and a charge approved, see Missouri, K. & T. Railway Co. v. Hendricks, 49 Tex.Civ.App. 314, 108 S.W. 745, 747, in which a writ of error was denied by the Supreme Court."

Sec. 138 of the City Charter named the City Manager as one of the persons to give the written notice to. We think the City Manager had the authority to send the appellees to some other person, naming him, to give the written notice to. That is exactly what the appellees did. By virtue of these instructions by the City Manager, appellant actually received the notice and it is estopped from denying liability therefor. The points are overruled.

By its fifth point of error, appellant takes the position that the amount of damages as awarded by the jury is excessive. We will not go into detail to state all of the damages that Lynda Fulce suffered. We will say, however, that persons who noticed her immediately after the accident took a handkerchief and pulled the skin back over her face. They testified about severe bleeding and the number of stitches that had to be taken. She was bound to have suffered severe pain to her abdomen, and other parts of her body, because she was caused to miscarry. The jury found the damages to be $40,000.00. Judgment was entered for $40,486.65. We think this point is without any merit and is overruled.

The judgment of the trial court is affirmed.