Audrey Mae ROBERTS et vir.,
Petitioners,

v.

HALTOM CITY, Respondent.

No. B–5716.

Supreme Court of Texas.

July 21, 1976.

Rehearing Denied Sept. 29, 1976.

George C. Thompson, Jr., David R. Sweat, Fort Worth, for petitioners.

Crumley, Murphy & Shrull, Franklin Moore, Fort Worth, for respondent.

SAM D. JOHNSON, Justice.

Audrey Mae Roberts instituted this action against the City of Haltom City for injuries sustained as a result of a fall on a street maintained by the City. The City filed a motion for summary judgment asserting that Mrs. Roberts failed to give the designated city officials written notice of her claim within thirty days of the occurrence as required by the city charter. The trial court granted the City's motion for summary judgment and the court of civil appeals affirmed. 529 S.W.2d 296. We reverse the judgments of the courts below and remand the case for trial.

The City's motion for summary judgment was based on Article X, Section 10.09, of the Haltom City charter, which provides in part:

"Before the City shall be liable to damage claim or suit for personal injury or damage to property, the person who is injured or whose property is damaged, or someone in his behalf, shall give the Mayor or the City Secretary notice in writing duly verified within thirty days after the occurring of the alleged injury or damage, stating specifically in such notice when, where and how the injury or damage was sustained, and setting forth the extent of the injury or damage as accurately as possible, and giving the names and addresses of all witnesses and upon whose testimony such person is relying to establish the injury or damage."

Both the city secretary and mayor filed affidavits in support of the City's motion for summary judgment stating that they did not receive the required notice of claim from Mrs. Roberts.

Mrs. Roberts' contention is that the City was estopped by the conduct of its agents from demanding compliance with the charter provision. The actions of the City's agents forming the basis for Mrs. Roberts' claim of estoppel were summarized in her affidavit in opposition to the City's motion for summary judgment:

"On May 3, 1973, I was injured in a fall which occurred in the 5100 block of Na-dine Street in Haltom City. On the evening of May 3, 1973, I was admitted to Harris Hospital where I remained for ten (10) days. After my release from the hospital, I called the offices of the following persons at Haltom City:

| "Mr. Lloyd Nivens | Superintendent of Public Works, Haltom City |
|---|---|
| "Mr. John Massey | Assistant to City Manager for Haltom City |
| "Mr. James McGuire | Police Chief for Haltom City on May 3, 1973 |
| "Mr. Roger Prater | Building Inspector for Haltom City |
| "Mr. Rex McEntire | City Attorney for Haltom City |

"I spoke with Mr. James McGuire, Chief of Police over the telephone. I explained to him that I had been injured in a fall and was making a claim against Haltom City. I also spoke with Mr. John Massey over the telephone and explained to him that I had been injured in a fall and was making a claim against Haltom City. This telephone conversation took place within thirty (30) days after the date of my injuries. Mr. Massey told me that Haltom City was not responsible and that the condition of the road was the responsibility of some contractors. He gave me a list of contractors to contact. He led me to believe that THE CITY OF HALTOM CITY was not responsible and that, therefore, I had no claim against it. I was unable to contact the contractors until after thirty (30) days after my injuries. Police Chief James McGuire told me that 'everything would be taken care of' and that the City Attorney's Office would let me know who was responsible for the condition of the street.

"THE CITY OF HALTOM CITY, by and through its agents, led me to believe that THE CITY OF HALTOM CITY was not the responsible party for my injuries. If I had known or if I had been informed by the agents and employees of Haltom City that no contractor was working on the street at the time of my injuries, I would have filed the required notice within thirty (30) days after the date of my injuries."

Upon Mrs. Roberts' release from the hospital following her fall, she contacted the contractors named by the assistant to the city manager. The contractors investigated and then reported to Mrs. Roberts that they were not performing any repair or construction work on the portion of the street where Mrs. Roberts was injured. The contractors, of course, denied liability. After so learning that the contractors were not engaged in any construction on the portion of the street where she fell, Mrs. Roberts filed this suit against the City seeking damages in the amount of $13,156.37.

In affirming the trial court's summary judgment for Haltom City the court of civil appeals held that Mrs. Roberts failed to demonstrate any evidence raising the issue of estoppel. Mrs. Roberts contends that the summary judgment proof raised two genuine issues of fact: (1) whether the conduct of Haltom City's agents was sufficient to estop the City from asserting the notice of claim requirement; and (2) whether the agents of Haltom City had sufficient authority to estop the City from requiring a written notice of claim.

■ At the outset the City contends there are no pleadings to support Mrs. Roberts' claim of estoppel. The claim of estoppel was specifically stated for the first time in Mrs. Roberts' motion for new trial. A similar contention was made in *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1972), where the defendants pleaded the statute of frauds in a suit to enforce a lease agreement and the plaintiff attempted to avoid the statute of frauds defense on the legal theory of promissory estoppel. The defendants insisted that the plaintiff was not entitled to claim promissory estoppel because this theory was neither pleaded in the trial court nor presented in the court of civil appeals. In response to this contention the court held that it had jurisdiction to determine the applicability of the promissory estoppel theory, and that the burden was on the plaintiff to adduce summary judgment evidence raising a fact issue concerning its promissory estoppel theory. In so holding the court relied upon *Womack v. Allstate Insurance Company*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956), where this court held "that when the affidavits or other summary judgment 'evidence' disclose facts which render the position of the moving party untenable, summary judgment should be denied regardless of defects which may exist in the pleading of the opposite party." We hold, therefore, that the summary judgment for the City must be reversed if the evidence raised a genuine fact issue as to estoppel regardless of Mrs. Roberts' failure to specifically plead this theory.

■ The initial substantive issue is whether the conduct of the city officials, as presented in Mrs. Roberts' summary judgment proof, was sufficient to estop the City from asserting the notice of claim requirement. The charter provision clearly required written notice of claims. It has been held that compliance with such charter provisions is mandatory and that filing of a written notice of claim is a condition precedent to maintenance of a suit against a city for injuries. *City of Terrell v. Howard*, 130 Tex. 459, 111 S.W.2d 692 (1938); *Phillips v. City of Abilene*, 195 S.W.2d 147 (Tex.Civ. App.—Eastland 1946, writ ref'd). However, in several cases Texas courts have held that a city may be estopped to demand compliance with a charter provision requiring written notice of claims, and the rule that municipalities may be estopped from asserting failure of compliance with notice of claim provisions is now well established in this state. *Cawthorn v. City of Houston*, 231 S.W. 701 (Tex.Com.App.1921, jdgmt. adopted); *Dias v. City of San Antonio*, 488 S.W.2d 522 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.); *City of Denison v. Fulce*, 437 S.W.2d 277 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.); *City of Waco v. Thralls*, 172 S.W.2d 142 (Tex.Civ. App.—Waco 1943, writ ref'd w.o.m.).

■ Mrs. Roberts' summary judgment affidavit stated that the assistant to the city manager informed her that the City was not responsible for the condition of the street but that others, private contractors, were responsible; she was thereby led to

believe that she possessed no claim against the City. We hold that this summary judgment evidence raised a fact issue as to the existence of the necessary elements of estoppel. The City may be estopped if the assistant to the city manager falsely represented that the City was not responsible for the condition of the street and if Mrs. Roberts relied on such representation to her detriment. A mere denial of the City's liability by the assistant to the city manager would not, of course, estop the City from demanding compliance with the charter provision. An estoppel will arise against the City only if the assistant to the city manager reported information to Mrs. Roberts that he knew or should have known was false. This estoppel is based upon the principle that a party may not profit by his own or his agent's wrongful act.

Courts in other jurisdictions have recognized the applicability of the doctrine of estoppel in cases where a false representation by a city's agent prevented a claimant from filing a required written notice. In *Fredrichsen v. City of Lakewood,* 6 Cal.3d 353, 99 Cal.Rptr. 13, 491 P.2d 805 (1971), a case very closely in point, the claimant was injured by a fall on a defectively maintained city sidewalk. She contacted the city shortly after her accident and requested that it supply her with the necessary claim form. Instead of sending a claim form the city clerk sent a letter to the claimant stating that the city was not responsible for maintenance of the defective sidewalk. After the period for filing written notice of claims had passed the claimant's attorney discovered that the defective sidewalk was maintained by the city, and the claimant then filed her suit against the city. In rejecting the city's contention that the claimant was precluded by failing to file the required notice, the California supreme court held that "[t]he city cannot frustrate plaintiff's attempt to comply with a statute enacted for its benefit and then assert noncompliance as a defense." 99 Cal. Rptr. 13 at 17, 491 P.2d 805 at 809.

The Florida supreme court reached a similar conclusion in *Rabinowitz v. Town of* *Bay Harbor Islands,* 178 So.2d 9 (Fla.1965). In that case the claimant was injured when his car struck a partially open drawbridge owned by the town. During an investigation of the accident the town's insurance investigator informed the claimant that the bridge was not owned by the town but, rather, was owned by a private corporation. After the expiration of the period for filing written notice of claims the claimant discovered that the bridge was owned by the town and thereafter filed suit against it. The court held that the conduct of the town's insurance investigator was sufficient to estop the town from asserting the claimant's failure to submit a written notice of claim.

The City may also be estopped from asserting noncompliance with the filing requirement if it led Mrs. Roberts to believe that the filing requirement was waived. The holding in *Cawthorn v. City of Houston, supra,* was based on this form of estoppel and subsequent Texas cases have consistently adopted the elements of estoppel set forth in *Cawthorn:*

"If, from the allegations of Cawthorn, the mayor and commissioners, through their agent, Drennan, so conducted themselves as to lull the claimant into a sense of security, causing him to think they were waiving said charter provisions, and if an ordinarily prudent person, under the same or similar circumstances, would have so concluded, then the city is estopped to demand strict compliance with the charter provisions." 231 S.W. 701 at 706.

We hold that the summary judgment proof raised a fact issue as to whether the City, through the statements and conduct of its officials, led Mrs. Roberts to believe that the filing requirement was waived, thus estopping the City from asserting the notice requirement as a bar to her suit. Our holding rests on the alleged statement by the City's police chief to Mrs. Roberts that "everything would be taken care of" and that the city attorney's office would let her know who was responsible for the condition of the street. This statement may

have been sufficient to lead a reasonably prudent person to conclude that the City was adequately notified and that no further steps needed to be taken until the City completed its investigation. In this respect the instant case is quite similar to *Dias v. City of San Antonio, supra,* where an investigator for the city's transit system told the claimant that the city would pay her medical bills and "take care of the matter." Based on the investigator's statements the court held that fact issues of waiver and estoppel were presented and that the summary judgment for the city was in error. In a similar holding the supreme court of Wisconsin found a city estopped from demanding a written notice of claim where the claimant reported the accident to the city's police chief who indicated that no further action would be necessary. *Harte v. City of Eagle River,* 45 Wis.2d 513, 173 N.W.2d 683 (1970).

The City contends, however, that it cannot be estopped by the conduct of its officials unless such conduct was expressly authorized. The City's contention finds support in the leading case, *Hallman v. City of Pampa,* 147 S.W.2d 543 (Tex.Civ.App.— Amarillo 1941, writ ref'd). In *Hallman* the claimant contended that the city was estopped to demand compliance with a charter provision requiring written notice of claims within thirty days because the city manager told the claimant that "it did not make any difference whether any claim was filed within thirty days but that the appellant could make out the claim later and go before the city commission." 147 S.W.2d 543 at 544. The charter provision in question required the filing of notice of claims with the mayor or city commissioners. The court stated:

> "Under such charter the notice was not required to be filed with him [the city manager] but with the city commission, which body was the only authority which could take cognizance of such claims and act thereon. The city manager possessed only such authority as might be given him by the charter or by the governing body of the city." 147 S.W.2d 543 at 546.

The court concluded that the city could not be estopped by the statements of the city manager because he was not expressly authorized, stating:

> "We think it would be a hazardous doctrine of far-reaching effects to announce the rule that any officer or employee of a city, *not expressly so authorized,* could bind or estop the city in matters of this kind which are placed exclusively within the authority of the city commission." [Emphasis added.] 147 S.W.2d 543 at 546.

The holding in *Hallman* that a city may not be estopped by the conduct of its officials and agents unless expressly authorized has been consistently followed by other Texas cases, including *City of Houston v. Hruska,* 155 Tex. 139, 283 S.W.2d 739 (1955), and *Phillips v. City of Abilene, supra. Phillips* involved a claim of estoppel against a city based on conduct of its mayor and an individual city commissioner which allegedly led the claimant to believe that the notice of claim requirement was waived. The court held that the city was not estopped despite the conduct of its individual officials because an ordinance provided that the notice requirement could be waived only by a resolution of the city's board of commissioners. In *Hruska* this court held that the unauthorized payment of sick leave benefits to an injured city employee, which allegedly led the employee to believe that the notice of claim requirement was waived, did not raise an estoppel against the city.

Compelling reasons now argue for reconsideration of the rule that a city may not be estopped from defending on the grounds of lack of notice unless the conduct of its officials was expressly authorized. This rule has frequently transformed notice requirements into traps for the unwary and, as the circumstances in the instant case illustrate, the rule often produces unjustifiably harsh results. According to Mrs. Roberts' summary judgment proof, she was given the "runaround" when she called city hall inquiring whom she should talk to about the accident. An unnamed city em-

ployee instructed her to call five different city officials, including the city attorney, none of whom had authority under the city charter to receive notice of claims. Mrs. Roberts contacted the offices of each of the five named officials. She was unable to speak with three of the officials but left messages with the persons who answered the telephones requesting that her calls be returned and informing them of her intent to file a claim. None of the three officials returned her calls. The two city officials with whom Mrs. Roberts was able to speak gave her misleading information. The police chief told her that "everything would be taken care of," and the assistant to the city manager stated that the City was not responsible and that the condition of the street was the responsibility of certain contractors.

Although Mrs. Roberts was not successful in filing her claim with the proper city officials, her telephone call to the city attorney's office resulted in an investigation of the accident by the City's chief building and construction inspector. On May 23, 1973, twenty days after the accident, the chief inspector sent a memorandum to the City's superintendent of public works which described Mrs. Roberts' accident and included a photograph of the street where she fell. The memorandum stated: "She [Mrs. Roberts] called the City Attorney's office and said she had broken her shoulder when she fell in the street, and wanted the city to pay her hospital bill."

■ The City now contends that Mrs. Roberts should not have relied upon the statements of the police chief or the assistant to the city manager because they were not expressly authorized. The City further urges that Mrs. Roberts should be deemed to have knowledge of the city charter provision which authorized only the mayor and the city secretary to receive notice of claims. However, it cannot be doubted that Mrs. Roberts' ignorance of the charter provision was primarily attributable to the actions of the city officials. While it is settled law that ignorance of a charter provision does not excuse compliance therewith,

this court in exercising its equitable powers under the doctrine of estoppel cannot ignore the practical effect of the conduct of the city officials. The purpose of estoppels is to prevent injustice and protect those who have been misled. *Kuehne v. Denson*, 148 Tex. 54, 219 S.W.2d 1006 (1949). The court's equitable power to prevent injustice may not be frustrated by rules of law that limit or preclude the responsibility of the City for the conduct of its officials.

■ We hold that the City may be estopped by the conduct of its officials if Mrs. Roberts relied upon such conduct in failing to file a notice of claim and if a reasonably prudent person would have so relied. Expressions to the contrary in *Hallman, Phillips, Hruska*, and other Texas cases are disapproved. Our holding should not, however, be construed as announcing a new rule of general application with regard to estoppel of municipalities or authority of municipal officials. We do not abandon the established rule against estoppel of cities as to governmental functions. *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex.1970). Even if the defense of damage claims by the City is deemed a governmental function, this court has recognized that exceptions to this general rule may exist where justice requires it and where no governmental function is impaired. *City of Hutchins v. Prasifka, supra*, at 836. Assuming the truth of Mrs. Roberts' factual allegations, this is an appropriate instance to recognize such an exception.

With regard to the instant case, we hold that the summary judgment proof raised a fact issue as to whether Mrs. Roberts relied upon the statements of the police chief and the city manager and whether a reasonably prudent person would have relied upon such statements.

The requirement that city officials be expressly authorized in order for their conduct to estop the city from defending on the grounds of lack of notice has created substantial obstacles to the assertion of damage claims against cities. These obstacles cannot be justified by the purposes that notice of claim requirements are intended

to serve. Moreover, misleading conduct by city officials, whether expressly authorized or not, should not be sanctioned. Yet, the rule followed by this court in *Hallman, Phillips,* and *Hruska* has permitted cities to benefit by the misconduct of their officials. The rule now adopted by this court will permit a broader application of the equitable rule of estoppel and thereby curtail misuse of notice of claim requirements.

The judgments of the trial court and of the court of civil appeals are reversed and the cause is remanded for trial.

Dissenting opinion by POPE, J.

POPE, Justice (dissenting).

Today's decision judicially invests scores of municipal personnel with powers to transcend the law which requires the filing of a timely notice of a claim. The decision empowers those persons to handle claims for cities whether they possess any authority to do so or not. The majority also holds that written notice of a claim which is required by the city charter is no longer necessary.

Mrs. Roberts gave nobody written notice of her claim until seven months after the accident. The majority says that a telephone call will do. The charter requirement that the notice state "when, where and how the injury or damage was sustained" is also nullified. Mrs. Roberts' summary judgment affidavit is silent about her timely furnishing those facts to anyone even by telephone. It is no longer necessary to set "forth the extent of the injury or damage" or to give "the names and addresses of all witnesses upon whose testimony such person is relying to establish the injury or damage." And finally, the majority holds that the person whom a claimant calls needs to possess no authority to deal with the subject, and authority to act for and bind a city will now be determined by the ordinary prudent man test.

It would be a mistake to think that today's opinion is an adoption of principles of estoppel as a means to avoid injustice. Texas has long recognized that an authorized agent for a city can bind a city on principles of estoppel. That was the reason that the estoppel operated in *Cawthorn v. City of Houston,* 231 S.W. 701 (Tex.Comm'n App.1921, jdgmt adopted); *City of Waco v. Thralls,* 172 S.W.2d 142 (Tex.Civ.App.1943, writ ref'd w. o. m.), and *Dias v. City of San Antonio,* 488 S.W.2d 522 (Tex.Civ.App.1972, writ ref'd n. r. e.) relied upon by the majority. But in each of those instances, the agent who acted for the city in creating the estoppel possessed the authority to act. I am in accord with those principles.

I disagree with a rule which permits an interloper, one who has no authorization from a city, to bind a city upon principles of estoppel. We have overruled an unbroken, settled, and so far as I have been able to detect in the legal literature, an uncriticized line of cases which say that it must be an authorized agent who works an estoppel upon the city. These are some of the cases: *City of Houston v. Hruska,* 155 Tex. 139, 283 S.W.2d 739 (1955); *Phillips v. City of Abilene,* 195 S.W.2d 147 (Tex.Civ.App.1946, writ ref'd); *Hallman v. City of Pampa,* 147 S.W.2d 543 (Tex.Civ.App.1941, writ ref'd). The new rule finds sparse support anywhere, and it means that oral notice to random persons in scattered municipal departments can keep claims afloat for indeterminate periods, whether the designated and authorized municipal agent ever gets the word or not.

The majority trades our settled law for a rule which is supposed to be espoused by *Rabinowitz v. Town of Bay Harbor Islands,* 178 So.2d 9 (Fla.1965), and by *Fredrichsen v. City of Lakewood,* 6 Cal.3d 353, 99 Cal. Rptr. 13, 491 P.2d 805 (1971). *Rabinowitz* is a case in which the legally designated agent for receipt of notice, the Town Attorney, was "fully informed of the entire situation by the Town manager." *Fredrichsen* was an instance of misleading information which a City Clerk supplied a claimant. It was the City Clerk, the very person who possessed the authorization to receive the notice of claim, who frustrated the timely filing of the claim. Those cases are slight support for a rule which excuses a late

filing of a claim by reason of conduct of an unauthorized agent.

Our Texas rule which has today been overruled comes from charter provisions which authorize cities by section 6 of article 1175:

6. To provide for the exemption from liability on account of any claim for any damages to any person or property, or to fix such rules and regulations governing the city's liability as may be deemed advisable.

Since the notice rules find their origin in legislative acts to begin with, I would think that the Legislature would have been the more appropriate body to set aside this court's clear rulings.

I respectfully dissent.